## EX PARTE D. R. RICE.

### No. 2603. Decided June 18, 1913.

### Rehearing denied January 21, 1914.

**1.—Pardon—Governor—Revocation of Pardon—Habeas Corpus.**

Where the Governor pardoned relator, stating that the condition of the pardon was that relator must conduct himself as a good and law-abiding citizen and not again violate the laws of the State before the expiration of the time for which he was sentenced, and relator accepted said pardon under the conditions therein set forth, the Governor could not revoke said pardon on the ground that further evidence had been presented and upon further consideration it was not thought that the relator deserved clemency at this time.

**2.—Same—Rule Stated—Unconditional Pardon—Fraud.**

When the Governor has issued an unconditional pardon and it is accepted by the prisoner and he is released thereunder, all power and control by the Governor over the prisoner is gone, unless the pardon was obtained by fraud.

**3.—Same—Conditional Pardon—Unconditional Pardon.**

A conditional pardon is as absolute an act upon the conditions named therein as is an unconditional pardon, and it can be revoked only upon a violation of the condition the Governor has seen proper to insert therein, and where the Governor does not claim in the proclamation of revocation that relator has violated any of the conditions in the pardon, such revocation is null and void.

**4.—Same—Conditional Pardon—Case Stated.**

Where the sole ground alleged in the revocation is that since the granting of the conditional pardon further evidence has been presented to the Governor, who, upon further consideration, does not deem relator worthy of clemency, and the original pardon was granted upon the condition that relator should not violate the laws of the State, such revocation is null and void.

**5.—Same—Power of the Courts—Discretion of Governor.**

While it is true that the right to grant pardons is conferred on the Governor by the Constitution and is not subject to review, yet this power does not necessarily carry with it the right to revoke the pardon on a condition not stated therein, and under the Constitution the judicial department under the writ of habeas corpus can discharge the relator.

**6.—Same—Revocation—Future Violation of Conditions.**

If relator should violate the condition at any time which the Governor placed in the pardon, the same may be revoked and annulled, but until he does so he is entitled to his liberty.

**7.—Same—Practice on Appeal.**

Where, in view of the disposition of the case, it is unnecessary to decide other questions raised, they will not be passed on.

**8.—Same—Rule Stated—Right to Revoke—Conditional Pardon.**

The right to revoke a conditional pardon does not come from any power conferred on the Governor by the Constitution and laws of the State, but solely by reason of the conditions placed in the pardon.

**9.—Same—Rule Stated—Power of Governor to Revoke, When.**

Neither the Constitution nor the laws of this State invest the Governor with the authority to conduct an investigation and decide whether or not a condition in the pardon has been violated. His power to revoke must arise from the language he uses and the reservations he makes in the conditional pardon, but this question is not raised, and need not be discussed, as the Governor does not claim that the conditions named by him in the pardon were violated by relator.

**10.—Same—Case Stated—Conditional Pardon.**

When the pardon was delivered to and accepted by relator, the conditions became binding on him and the Governor as well, and before the Governor can act, relator must violate the conditions named, or some one of them.

Appeal from the District Court of Tarrant. Tried below before the Hon. Marvin H. Brown.

Appeal from a habeas corpus proceeding denying relator's release as a pardoned convict.

The opinion states the case.

*Collins & Cummings* and *W. F. Ramsey* and *O. L. Black*, for relator.—
First. The Governor has the power to grant conditional pardons. Such power is incident to his power to grant absolute pardons. 1 Bishop

on Criminal Law, sec. 914; Carr v. State, 19 Texas Crim. App., 635; Ex parte Wells, 18 Howard, 307, 15 Law Ed., 421; U. S. v. Wilson, 7 Peters (U. S.), 150; Am. & Eng. Ency. of Law, p. 566.

Second. When a pardon is granted containing conditions precedent, it does not become effective or valid as a pardon until the conditions named have been satisfied; however, when it is granted on a condition subsequent, it becomes immediately effective and so remains until there has been a breach of the conditions subsequent in the pardon. Ex parte Marks, 64 Cal., 29; Ex parte Williams, 63 S. E. Rep., 108, holding that where a pardon is issued containing conditions precedent and conditions subsequent, and it is shown that the conditions subsequent have been complied with, the pardon is valid, unless the person asserting its invalidity show a violation of the conditions subsequent. 24 Am. & Eng. Ency. of Law, p. 580-581; Alvarez v. State, 39 Southern Rep., 481.

Third. Under the law and under the express terms of the pardon issued to your relator, the Governor had no power to revoke the same until there had been a violation of the conditions subsequent named in same. The Governor did not reserve the general power to revoke the pardon without cause (if such reservation would be valid at all), but merely reserved the power to revoke the same in the event the conditions named should be breached. He, therefore, had no authority to issue the order revoking the pardon until some one or more of the conditions named in the pardon had been violated. Ex parte Williams, 63 S. E. Rep., 108; Salgado v. Baldwin, 105 Texas, 508 (loc. cit., 510-11); People v. Moore, 62 Mich., 496; Knapp v. Thomas, 39 Ohio State, 377; Ex parte Alvarez, 39 Southern Rep., 481; State v. Wolfer, 54 N. W. Rep., 1065; U. S. v. Hughes, 1 Bond, 574; Rosson v. State, 23 Texas Crim. App., 287, in connection with Rosson v. State, 24 App., 226; Carr v. State, 19 Texas Crim. App., 635.

Fourth. Since the Governor, in his public proclamation and order revoking the pardon, recites with detail every particular relating to the issuance of the pardon and the terms and conditions thereof, and further states the grounds and reasons upon which the order of revocation is based, it can not be presumed by this court against such express and particular recitals that other and different grounds and reasons for the order of revocation in fact existed. Even if it be conceded that it was not necessary that the grounds should be recited in the order, still, since the grounds are stated, presumption can not be indulged in order to add to or vary such recitals and supply other and different grounds not stated. Hahn v. Kelly, 34 Cal., 391, on effect of recitals in a judgment; Galpin v. Page, 18 Wallace, 350, 21 Law Ed., 959, for the rule heretofore quoted with reference to express recitals of jurisdictional facts; 23 Cyc., p. 1081, stating the rule with reference to presumptions of jurisdictional requirements when the facts are recited.

Fifth. Where one is asserting a right of action or a ground of defense predicated upon the asserted breach of a condition subsequent in any instrument, he assumes the burden of showing such breach. There-

fore, the sheriff of Tarrant County, holding your relator and depriving him of his liberty upon the ground that he had breached one or more of the conditions subsequent contained in the pardon issued to him, has the burden of showing that the conditions subsequent have been violated. Thayer v. Conner, 5 Allen, 25, stating rule with reference to burden of proof as to breach of conditions subsequent; also the following authorities stating the same rule: Ins. Co. v. Dyches, 56 Texas, 565; Fireman's Fund Ins. Co. v. Sherman, 50 S. W. Rep., 598; Ins. Co. v. Fred, 32 S. W. Rep., 243; Kemendo v. Ins. Co., 57 S. W. Rep., 293.

Sixth. This court has the power, under the law of this State, to determine whether relator is legally restrained of his liberty by the sheriff of Tarrant County, and it appearing from the proclamation of the Governor revoking the pardon theretofore issued to your relator and accepted by him and from the recitals of said proclamation that the same was revoked upon illegal grounds and upon grounds not authorized by the law and not authorized by the terms of the pardon granted, and the sheriff having furnished no further evidence than such recitals to show the breach, if any, of any of the conditions of the pardon, this court did not err in ordering the discharge of your relator. Ex parte Williams, 63 S. E. Rep., 108; Ex parte Alvarez, 39 Southern Rep., 481; Knapp v. Thomas, 39 Ohio State, 377; State v. Wolfer, 54 N. W. Rep., 1065; Salgado v. Baldwin, 105 Texas, 508; Carr v. State, 19 Texas Crim. App., 635; Ex parte Rosson, 24 Texas Crim. App., 226.

We, therefore, respectfully submit that the contention of counsel that this court, by its judgment, has encroached upon the exclusive power of the Governor, is manifestly unfounded and that the authorities cited to support this position are plainly inapplicable.

But it is said that, the Governor having revoked the pardon, it should be presumed that the relator had violated its conditions. Now, let us examine this position. In the beginning, it should be noted that the condition stated in the pardon is a condition subsequent. The pardon went into full effect at once and remained in effect, subject only to a violation of the conditions subsequent. With reference to conditional pardons, as with reference to all other instruments, the courts distinguish between conditions precedent and conditions subsequent. A pardon issued on a condition precedent, for instance, that the prisoner will pay the costs assessed against him, does not become effective until this condition has been performed. Until it has been performed, the prisoner is still a convict and has acquired no right under the instrument. When a pardon is granted, however, upon a condition subsequent, for instance that the prisoner will thereafter conduct himself properly as a citizen and not violate the laws of his country, the pardon becomes effective and remains effective until he has, by some act, violated its conditions. See, generally, on this question, 29 Cyc., p. 1561; Carr v. State, 19 Texas Crim. App., 635; Bishop's Criminal Law, sec. 914; Am. & Eng. Ency. of Law, vol. 24, pp. 580-581, defining pardons issued on conditions precedent and conditions subsequent. With reference to the latter, it is

there stated: "In case of a condition subsequent, the pardon goes into effect but is rendered null and void by the non-performance or violation of a condition and thereupon the original sentence may be carried into execution."

Under the express terms of the pardon issued to the relator, the Governor reserved the power to revoke the same only in the event its conditions were violated. Counsel seem to have overlooked this important consideration repeatedly in their argument. They refer to the power of the Governor to revoke conditional pardons. This power, however, does not exist until there has been a violation of the conditions. It is a violation of the condition that revokes the pardon and not necessarily the mere act of the Governor. Under the express terms of the instrument and under the law, his power to revoke the pardon could arise only in the event there had been a violation of its conditions. The law is so written and the pardon is so written and, in order to uphold the position of counsel that the Governor has a general unrestrained right to revoke the pardon, both the pardon and the law must be overlooked. Cases supra.

*C. E. Lane,* Assistant Attorney-General, and *S. C. Padelford,* for the State.—The Constitution confers upon the Governor the exclusive jurisdiction over pardons. This court holds, which is correct, that the Legislature has no power whatsoever to legislate on this subject or to interfere with the Governor in his jurisdiction over this matter, and also that the courts have no jurisdiction or power to supervise or control the Governor in this matter, not even to criticize the actions of the Governor in the exercise of his jurisdiction over this subject.

So the jurisdiction over the subject of pardons, including the executive, legislative, and judicial, is by the Constitution vested exclusively in the Governor and under this grant of power over this subject, the Governor can issue a pardon and attach to it such conditions as may seem best and proper to him, provided only that the conditions are not immoral or illegal; and the Governor can, in such conditional pardon, reserve the power, *in his discretion,* to revoke the pardon, on the breach of any of the conditions therein contained; and he can reserve the discretion to determine the breach of these conditions. The Governor in this pardon having expressly reserved the power to revoke the conditional pardon in his discretion, and having under this power revoked it, he has *determined* that one of the conditions therein named has been breached.

This power to determine in his discretion the breach of the condition and revoke is as absolutely in the discretionary power of the Governor as is the original power to determine the advisability of granting and to grant the pardon.

It is the duty of the Governor before granting a pardon to inquire into all of the merits of the application, and then to exercise his discretion, which is conferred upon him by the Constitution, in granting a pardon. But the Governor can grant an absolute pardon, to the most unworthy and most undeserving and the vilest and most abandoned of criminals,

without any cause or excuse whatsoever, and neither the Legislature nor the judiciary can call in question or in any way modify or set aside such a pardon so granted, though it should shock the public conscience.

When the Governor has reserved in the conditional pardon the power in his discretion as in this case to revoke a conditional pardon upon the breach of a condition, his power so reserved is as *absolute* as the original power to grant the pardon, and the courts have no more power to supervise and control the Governor in the exercise of the one power than to control him in the exercise of the other.

All the courts hold, that the judiciary can not in any manner or wise, supervise or control the Governor in the exercise of his discretion in granting a pardon. Then how can his discretion, exercised in revoking a pardon, be controlled, when his reserved discretionary power is agreed to by the prisoner; and is the exercise of as absolute a power as that exercised by him in this discretion in granting the conditional pardon.

The Governor expressly states, in the revocation in question, that he revokes the pardon, "*by virtue of the authority vested in him under the law, and by virtue of the conditional pardon quoted above*"; and under and by virtue of *this authority declares* the said conditional pardon revoked and void. The Governor had, under the law and under the conditional pardon, the power to revoke it, and he reserved *the discretion* to judge of the breach of the condition, and he reserved the discretionary power to revoke it, and under these powers he revoked the pardon. So the plain and unequivocal question which is before this court for its determination, is whether or not the courts can supervise the action of the Governor in exercising of this power; when the exercise of this power is unreservedly and absolutely conferred upon him by the Constitution. We think the courts are powerless to supervise and control this *power* of the chief executive of this State. One department of our government can not control another coördinate department in the exercise of a power given by law, especially by the Constitution.

The people of Texas in the Constitution have entrusted and conferred upon the Governor the exclusive exercise of this power, and his discretion and judgment and action in exercising this power is beyond the reach of the Legislature or courts, and if he abuses it, either in granting or revoking a conditional pardon, the responsibility is alone with and to the people, who have conferred and entrusted this power exclusively upon and with the Governor. Under the law and decisions of this State, the courts can not in any manner control the exercise of a legal power, by the Governor, whether by mandamus, or by injunction, or by habeas corpus, and the only question for the court to determine in passing upon the action of the Governor, is whether or not the exercise of the particular power by the Governor is the exercise of a power which has been conferred upon him by the Constitution or by a valid statute of the State.

His reasons for the exercise of the power, the facts upon which he based the exercise of his power, or whether he based his action upon any

evidence or not, can not be questioned or inquired into by the courts in such proceedings as mandamus or injunction or habeas corpus.

The courts can only inquire into the fact of the *power* of the Governor to so act, if he had the power to act the courts have no power to question this act or the motives, reasons, ground, evidence or basis for the exercise of this legal power. By mandamus the courts attempt to compel the performance of a certain act, by injunction to prevent the performance of an act, by habeas corpus to annul, cancel or set aside a certain act. A court can not compel the Governor to grant a pardon to a prisoner, though the prisoner was absolutely innocent and convicted without any evidence whatsoever; the courts can not enjoin the Governor from pardoning without cause the vilest of criminals, nor can the court by habeas corpus annul and set aside such a pardon. In other words, the courts have as much power to exercise either one of the above extraordinary writs and functions as they have the other. Bacon said that the courts were like the lions which supported the throne of Solomon. They should be brave, but should remember that they were beneath the throne. The thrones of our free Republican governments are our written Constitutions. Our courts have been, and still are, one of the chief supports of these thrones of a free people, but they should also remember that they are beneath and should be controlled by these thrones. And they should also remember, that there are two other independent coördinate departments, who are also lions, and who support the same throne, and that the functions of these separate coördinate departments are separate, distinct and absolutely independent of each other. This same great philosopher and judge also said, that the function of the court is *discere,* and not *dare,* to interpret and not to make the law, simply to judge and not to rule. We wish to call your honors' careful attention to the very luminous and conclusive opinion on this question by Justice Cooley, in the case of Southerland v. The Governor, 29 Mich., 320, which is a classic and the most authoritative and conclusive decision ever rendered upon this important question. See also The State v. The Governor, 1 Dutch, 331; Hawkins v. The Governor, 1 Ark., 570; The State v. The Governor, 39 Mo., 388; In re Dennett, 32 Maine, 508; G. C. L. Co. v. Routt, 31 Am. St. Rep., 284, where this subject is exhaustively treated and most all of the authorities collected on this subject in an exhaustive note. Also the State v. Stone, 120 Mo., 428, where a large number of the authorities on this question are collected and discussed. High on Extraordinary Remedies, 2 ed., Eyc., 118-20; Wood on Mandamus, 124-124; Merrill on Mandamus, sec. 97. We also call your honors' attention to the case of Decatur v. Paulding, 14 Pet. U. S., 497; U. S. v. Black, 128 U. S., 40-49; Horner v. U. S. 143 U. S., 570; Ex parte Rickelt, 61 Fed. Rep., 203, 205. Opinion by Taft, Justice.

Your honors are familiar with the exhaustive decision of Chief Justice Roberts reported in 24 Texas. Our court hold that a mandamus will not

issue to compel action by the Governor. Also refer to 2 High on Injunction, sec. 1323, Black on Constitutions, 3 ed., pp. 91, 92, 94, 95 and 96 and 325, and authorities cited.

HARPER, JUDGE.—In this case appellant had been convicted in the District Court of Hill County, Texas, at the March term of the court in 1907, and sentenced to imprisonment in the penitentiary for life. After serving about five and one-half years of the term, the Governor issued him a conditional pardon, which, omitting the formal part, reads as follows:

"Now, therefore, I, O. B. Colquitt, Governor of Texas, feel constrained to grant the said D. R. Rice a conditional pardon, and I do by virtue of the authority vested in me by the Constitution and laws of this State, hereby, for the reason specified, grant the said D. R. Rice a conditional pardon from said conviction and sentence passed upon him by the District Court of Hill County, the condition being that if this pardon is accepted by the beneficiary, he must conduct himself as a good and law-abiding citizen and not again violate the laws of the State before the expiration of the time for which he was sentenced; otherwise, this pardon is subject to be revoked at the discretion of the Governor, and, he, the said D. R. Rice, may, by order of the Governor of Texas, be again taken into custody by the proper officers of this State and taken to and confined in the State penitentiary until the end of his sentence." On the 20th day of May of this year appellant endorsed on said pardon his acceptance of it on the terms and conditions named therein, and was released from prison. The acceptance reading: "I accept this pardon on conditions above set forth, this the 20th day of May, 1913. D. R. Rice." Thereafter, the Governor, on the 23rd day of May, issued a proclamation revoking, cancelling and annulling the conditional pardon, ordering the rearrest and confinement of relator in the penitentiary, the revocation reading as follows:

"Be it further known, that since the said conditional pardon was granted as aforesaid, further evidence has been presented, and upon further consideration it is not thought that the said D. R. Rice is deserving of clemency at this time.

"Now, therefore, I, O. B. Colquitt, Governor of Texas, by virtue of the authority vested in me under the law, and by virtue of the said conditional pardon above quoted, do hereby determine that the said D. R. Rice is not deserving of the clemency asked for at this time, and do further hereby declare the said conditional pardon revoked and void, and direct the sheriff of Hill County, or any other sheriff or peace officer of this State to take into custody the body of the said D. R. Rice and convey him back to the State penitentiary and deliver him to the proper officer thereof, to be confined therein for such portion of his sentence as had not expired at the time of his release on said conditional pardon."

Appellant was rearrested and confined in the Tarrant County jail when he sued out a writ of habeas corpus before Hon. Marvin H. Brown,

Judge of the District Court of Tarrant County. When the application came on to be heard the judge refused to admit any testimony other than the two proclamations of Governor Colquitt—the one granting the conditional pardon, and the other revoking it. Upon the hearing, relator was remanded to the custody of the sheriff, and prosecutes this appeal.

Able arguments were made in this court, both by counsel for relator and counsel for the State. Briefs showing research, study and much learning were filed by both counsel, and owing to the importance of the question involved, we have given the question much thought. The reporter is requested to print the briefs in connection with this opinion, and it being so done, it becomes unnecessary for us to state the contentions of each, and it becomes only necessary for us to decide those questions necessary to the disposition of this case; the others raised we will not discuss.

Many able opinions have been written in regard to the pardoning power by the court of final resort in many of the States, and we have carefully and thoughtfully read many of them. We adopt those that hold:

"Pardon has been defined as a 'remission of guilt.' Another definition, much quoted, is that it 'is an act of grace proceeding from the power entrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed.' In another case it is said to be 'an act of grace by which an offender is released from the consequences of his offense, so far as such release is practicable and within the control of the pardoning power or of officers under its direction.' . . . But these definitions must necessarily, as all definitions of law terms, convey an imperfect idea of the full meaning and effect of a pardon. It is only by a study of the adjudged case that an accurate idea of a pardon, in law, can be obtained. : . .

. "The Saxon kings of England had the power to grant pardons; and then and ever since it has been deemed one of the king's prerogatives. Anciently the power of pardoning in certain districts was claimed by the lords of marches, and even by others who had *jura regalia* by ancient grants from the crown, or by prescription. But by an early statute it was declared that the king had the sole power of pardoning treason or felonies, whether the offense was 'committed in England or Wales, or the marches of the same.' In that country, the king is the prosecutor of all offenders against the criminal laws of the realm, and in his name all actions are brought. It was, then, perfectly consistent in theory that the king could, by means of a pardon, remit any punishment due to public justice, or any fine or forfeiture which he himself would otherwise receive.

"Under our Constitution the President has 'power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment.' There was a motion made in the convention to limit his power to grant reprieves until the ensuing session of the Senate; and a

further attempt to withhold the power to pardon for treason, and leave that power to Congress; or that he might pardon for treason by and with the advice and consent of the Senate. It was also proposed that in all cases the consent of the Senate should be necessary to render a pardon available. But the clause was settled as it now is, seemingly without much controversy.

"It was the theory of the early law writers of England that all liberties of the subject were first derived from the crown. Such was the understanding of Bacon. And thus arose the claim of those monarchs to pardon offenses viewed as trespasses against their peace. Certain great authorities have gone so far as to state that no pardon could be granted in a democracy, but these are only illustrations of the narrow and limited views so frequently found among the early legal writers, and which today frequently impede, rather than promote, public justice. In this country all power is in the people. If unrestricted by any constitution, the power of Congress would be supreme—supreme as the delegates and representatives of the people. In such a case Congress would have supreme power to grant a pardon. What is true of Congress is also true of the Legislatures of the States. But the power of granting pardons to offenders against the United States has been delegated to the President, because he stands, if such can be said of any person, in the place similar to that occupied by the monarchs of other nations. He does not hold the power simply because he is the chief executive, but because it is expressly delegated to him. And what is true of the President is also true of the chief executive of a State where such power is granted to him by the Constitution. . . .

"It is a maxim of constitutional law that no one of the three great departments of the government shall intrude upon any one of the others, and all attempts to do so are void. And it is universally conceded that the Constitution having given the President power to grant pardons, that such grant is to the exclusion of all the other departments of the government, and that no other person can grant it or in any way dictate to the chief executive to whom he shall extend or withhold clemency. 'This power is not subject to legislative control. Congress can neither limit the effect of his pardon nor exclude from its exercise any class of offenders. The benign prerogative of mercy reposed in him can not be fettered by any legislative restriction.' Such is the rule where the chief executive of a State has sole power, under the Constitution, to grant a pardon."

These views and thoughts are copied from very able law writers, and express most fully our views on the subject. The Constitution of this State granting that power to the Governor, it is for him alone to exercise without restraint or restriction from any source, other than the sovereigns of the State who wrote and adopted the Constitution. The power to grant absolute pardons necessarily carries with it the lesser power to grant conditional pardons, and to write into the gift or grant such conditions as he deems advisable, without restraint or hindrance,

so long as he states therein no illegal or immoral conditions. In the conditional pardon issued in this case, he stated no illegal nor immoral condition, and he had the right, authority and power to place therein the conditions he did write into it, and he would have the right to place therein any other conditions he deemed advisable. Thus far, we thoroughly agree with counsel for the State in their contention.

But counsel for the State insist that the power to grant pardons necessarily carries with it the authority and power to *control* the pardon after its issuance and acceptance. Under all the authorities we have been able to find, the rule is that when the Governor has issued an unconditional pardon, and it is accepted by the prisoner, and he is released thereunder, all power and control over the prisoner is gone. The Governor has no authority to revoke an unconditional pardon after its issuance, delivery and acceptance. It is true that when a pardon has been obtained by fraud, when that fact is proven, it may be cancelled and annulled by the proper tribunal, but this must be legally ascertained before an unconditional pardon can be cancelled, and the prisoner rearrested and confined.

A conditional pardon is as absolute an act upon the conditions named therein as is an unconditional pardon. It can be revoked and annulled only upon a violation of the conditions the Governor has seen proper to insert therein. Upon a violation of the conditions, the right of revocation at once arises, but if the conditions are not violated the right to annul does not exist. This right springs into existence coincident with the violation of the conditions, or either of them, named in the conditional pardon. If relator has violated any of the conditions named in the gift or grant of the Governor, and this fact is properly ascertained neither this court nor any other tribunal can question his right to cancel and annul the pardon, or review or control his discretion and power in so doing. But the question arises, does the Governor state or claim in the proclamation of revocation that relator has violated any of the conditions he deemed advisable to place in the pardon granted by him? He granted it, the *"condition being that if this pardon is accepted by relator, he must conduct himself as a good and law-abiding citizen and not violate the laws of the State before the expiration of the time for which he was sentenced,"* in this case being during the remainder of his life. Now, in the proclamation of revocation, does the Governor allege, state or find that relator has violated the conditions therein named? Does he state or claim that in the three days of his release he did not conduct himself as a good and law-abiding citizen, or does he claim that relator has violated the laws of this State? No, the sole ground alleged is that since the granting of the conditional pardon further evidence has been presented, and upon further consideration he does not think relator entitled to clemency at this time. It is but another way of stating if he had had this further evidence he would not have granted the pardon he had theretofore granted. So, the question presented is, that having granted a pardon upon conditions named

therein, and the pardon delivered and accepted, can the Governor revoke it at his will, even though the relator never violates the conditions the Governor saw proper to place therein as a condition upon which he would extend mercy or grace? Can he take back the pardon, even though the relator religiously lives up to the conditions upon which it was granted? That the Governor can revoke the pardon if relator violates the conditions of the pardon, can not be questioned, for he reserved in the grant the right to do so, and this he had the right to do. But, having granted relator a pardon upon the conditions that he conduct himself as a good law-abiding citizen, and that he violate no law of this State, and this pardon having been delivered to him and accepted by relator, the power and authority to annul it, except upon the violation of the conditions named, does not exist. It is not inherent in the office of Governor, it was not granted to him by the Constitution, and the revocation in this instance is null and void.

Counsel for the State insist that even though the action was arbitrary and without warrant in law, this court has no right to review his acts; that this discretion is confided in or conferred on him, and we have no right to review that discretion. It is true the right to grant pardons is conferred on the Governor by the Constitution, and in granting them, his actions are not subject to review, but the power to grant pardons does not necessarily carry with it the right to revoke them. As before stated, it is the universal rule that the Governor has no right to revoke an unconditional pardon when delivered and accepted. The power to revoke arises by reason of the conditions named in a conditional pardon, and its acceptance on those terms. It is true he can not be and ought not to be controlled by any other tribunal in exercising his judgment as to the conditions upon which he will grant a pardon. In this respect his discretion is absolute and can not be reviewed by this court. But, having exercised this discretion, and placed in the pardon such conditions as he deems advisable, when delivered to and accepted by the prisoner, he is entitled to his release from prison. He becomes a free man and entitled to his liberty so long as he complies with those conditions, and none have the right to say him nay, so long as he complies with the conditions which he accepted to obtain his liberty. For, while our Constitution gives to the Governor the right to grant pardons, it contains provisions also for the protection of the life and liberty of the citizen, no matter how humble he may be, and that Constitution places upon the duly constituted officers of the government the duty to see that the citizen is protected in his life and liberty so long as he may be entitled thereto under the laws of the State. Article 2 of the Constitution, in the division of the powers of the government into executive, legislative and judicial branches, further provides that no person, or collection of persons, being of one of these departments, shall exercise the power of the other, except in the instance herein expressly permitted. We are not seeking to exercise any power conferred on the Governor, nor would we do so, but there is some power conferred on—

nay, a duty placed on the judiciary department of this State. Article 12, section 1, provides that the writ of habeas corpus shall never be suspended, and in section 6, of article 5, the power to issue the writ of habeas corpus is specifically conferred on this court in all cases. Section 9, of article 1, provides that the people of this State shall be secure in their persons, and no warrant to seize any person shall issue without probable cause supported by oath or affirmation; and section 19, of article 1, provides that no citizen of this State shall be deprived of his liberty, except by due course of the law of the land.

If a citizen of this State is wrongfully incarcerated in prison, it is not only our right, but under the plain mandates of the Constitution, it is made the duty of this court, upon habeas corpus, to inquire into and see if he is legally and lawfully restrained of his liberty, and if he is not, we would be recreant to the duty imposed on us if we did not order his release and protect him in his liberty.

As hereinbefore stated, if relator shall at any time after his acceptance and release under the pardon given by the Governor violate the conditions placed therein by the Governor at the time of granting same, and which he accepted to secure his release from imprisonment, the Governor, if in his discretion he deems advisable, may revoke and annul the pardon, but until he does violate the conditions he is entitled to his liberty, and he is ordered discharged. The other questions raised, in view of this disposition of the case, it is unnecessary to decide and they are not passed on.

Able counsel for the relator and the State have cited so many au· thorities, we have not deemed it necessary to do so in this opinion, but merely refer to them, the briefs being ordered printed in connection with this opinion.

Reversed, and relator ordered discharged.

*Relator discharged.*

### ON REHEARING.

### June 27, 1913.

HARPER, JUDGE.—In this case the State has filed a motion for rehearing, and upon the invitation of the court the Hon. S. C. Padelford made a very able oral argument, but stated he had not had time and would not have time to file such written brief as he desired to file before the adjournment of court, and, inasmuch as this court, by operation of law, must adjourn for the term this week, and the question presented is one of much importance, we have concluded to postpone consideration of the motion for rehearing until the beginning of the next term, with the request that State's counsel file such brief as they desire on or before August 1st, and that relator's counsel file a brief, if they so desire, on or before September 1st, that this court may give to this case that study and thought its importance deserves during vacation. However, in entering this order, we do not think relator ought to be confined in

jail during the vacation of the court, and while counsel are preparing their briefs, but that he ought to be allowed his liberty during such time, and we hereby order him released upon entering into bond with two or more good sufficient sureties in the sum of five hundred dollars, conditioned that relator will make his appearance before this court at the beginning of the next term of this court, being the first Monday of October, 1913, and there remain from day to day and term to term to abide the judgment and decree of this court upon the final disposition of this case; said bond to be presented to and approved by the sheriff of Tarrant County, who is ordered to relase relator upon the execution and delivery of such bond to him, and which said bond will be forwarded by the sheriff after its approval by him to the clerk of this court to be filed with the papers in this cause.

## ON REHEARING.

### January 21, 1914.

HARPER, Judge.—At the last term of court this case was reversed and relator ordered discharged. The State filed a motion for rehearing, and at their instance the case was continued until this term to enable them to prepare and file a brief herein. Able and exhaustive briefs have been filed both for the State and relator, and we have carefully perused each of them, but being of the opinion the original judgment entered was correct, we would write no further, only that the State seems to have misunderstood the language we used, or we did not make our meaning clear. It is stated in the brief that "the judge of the lower court held that the judiciary of this State can not supervise, inquire into, set aside or disturb the action of the Governor, the chief executive of this State, in the performance of the powers and functions conferred upon him by and under the Constitution of this State," and by inference proceeds to argue that this court had held otherwise. In no line or syllable of the original opinion can such construction be placed on the language there used. But if there is any provision of the Constitution or in the statutes of this State that authorizes the Governor to *revoke a pardon,* State's counsel have failed to point it out, and we have been unable to find it. In fact, we may state that there is no such authority granted the Governor by the Constitution or laws of this State. In the brief filed in behalf of the State it seems that the contention is made that as the Governor is granted power and authority to *grant* a pardon, that this includes the right to *revoke* a pardon after it is granted, and that the State's contention is based upon the error that the Constitution confides to the Governor the power and authority to *revoke a pardon* as well as to grant it, is manifest throughout in the brief filed. An unconditional pardon could not be revoked unless obtained by fraud, etc., has been universally held by all the courts, and then it is revoked on the ground that it was *void in its incipiency* because obtained by fraud. It

is not a power of revocation which is being exercised, but an ascertainment of a fact which rendered it void when issued,—the same rule being applied to pardons that is applied to all other transactions in life. And if the Governor is not granted the authority and power to revoke an unconditional pardon at pleasure by the Constitution, and this certainly no one can so contend, then the right to revoke a conditional pardon comes not from any power conferred on him by the Constitution and laws of the State, but by *reason of the conditions placed in the pardon,* and solely from that source.

The State in its brief ably and learnedly discusses the three divisions of the government, to all of which we agree, and recites the history of the foundation of our government, which we do not deem necessary to discuss at this time. We would not, nor would we be authorized to, seek to control the actions of the Governor in matters in which the Constitution confers on him the authority and power. But if the Governor should seek to revoke an unconditional pardon on the ground that it was obtained by fraud, we would not inquire into whether or not the Governor had the *power* to revoke the pardon if a fraud had been perpetrated in obtaining it, but upon proper allegations we would determine whether or not a *fraud had been perpetrated.* The mere recital that a fraud had been perpetrated would not be conclusive nor binding on this court. So in a conditional pardon, if it was recited that the conditions had been violated, we would inquire into and see if the conditions had been in fact violated, unless in the conditional pardon the Governor had reserved to himself the right to so find and the pardon had been accepted under such conditions.

The statement is made in the brief that the "Constitution confers upon and delegates to the Governor the *power and* jurisdiction over pardons." This is erroneous. The Constitution only grants to the Governor the power to *grant pardons,* and confers upon him no further or other jurisdiction in the premises, and all the argument and authorities based upon such premise is of little force, or of no force, because based upon an incorrect conclusion. The Governor in granting a pardon, can place therein conditions if he so desires, and provide for a revocation in the event the conditions are violated; and he and he alone must make the revocation, and this court and no other court would seek to control his action in revoking the pardon *if the conditions have been violated.* But his·power and authority to revoke does not arise until a *violation of the conditions* has taken place. Then it is, and not until then, does a discretionary power vest in him to say whether or not he will revoke the pardon. If upon the violation of the conditions named, he revokes the pardon, we would not seek to stay his hand, nor would we have any authority to do so. If he should decide that a violation took place under such conditions that he would not revoke it, we would not and could not require him to do so. This is the discretion with which he is invested— whether or not he will revoke *after a violation of the* conditions, and we heartily agree with all the authorities cited by the State that we

should not seek to control a discretion of the Governor in a matter which is confided to him. But neither the Constitution nor the laws of this State invest the Governor with the authority to conduct an investigation and decide whether or not the condition has been violated. If he has this power it must arise from the language he uses and reservations he makes in the conditional pardon. But this feature of the case, to which the State devotes so much of its brief and argument, need not be discussed, because the Governor in the attempted revocation does not claim that the conditions named by him in the pardon have been violated by relator.

The State also claims in its brief that we hold a conditional pardon is the same as an unconditional pardon. This is a misconception of the language of the opinion, for we did not hold nor intend to hold any such thing. What we did hold was that the Governor had no more authority to revoke a conditional pardon until a violation of the condition than he has to revoke an unconditional pardon. This and nothing more, and upon this misconception of our holding the State builds a straw man and knocks him down. As hereinbefore stated, we did not in the original opinion, nor do we now, hold that this court can review or control the *discretion of the Governor* in any matter in which the Constitution or the law confides it to him. What we did hold and now hold is, that the Governor was invested with no discretion to act in the premises by the Constitution, nor the laws of this State, until some of the conditions placed by him in the pardon had been violated, and as he did not claim and does not now claim that any of the conditions have been violated, he had no power of revocation in this case, and will have none until some of the conditions named in the pardon have been violated by relator.

When the pardon was delivered to and accepted by relator, the conditions became binding on him, and the Governor as well, and before the Governor can act relator must violate the conditions named, or some one of them.

The motion for rehearing is overruled.

*Overruled.*