STATE OF MAINE

*vs.*

T. D. PARENT, AS PRINCIPAL, AND

W. J. AYOOB AND FRANK DORSEY, AS SURETIES.

Aroostook.     Opinion April 20, 1934.

*George B. Barnes,* for State.
*O. L. Keyes,*
*David Solman,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J.    Report upon an agreed statement of facts. Action of scire facias on recognizance given by the defendant, Parent, as principal, with the defendants, Ayoob and Dorsey, as sureties.

Condensed, the material facts are that on November 4, 1929, in the Fort Fairfield Municipal Court in Aroostook County, the principal defendant was found guilty upon the charge of illegal possession of intoxicating liquor and was sentenced to pay a fine and costs, and to be imprisoned for the term of sixty days, and in default of payment of the fine and costs to be imprisoned six months additional. He appealed and for his appearance at the appellate court recognized with Ayoob and Dorsey as his sureties. Before

record of the case was forwarded to the higher court, and prior to its sitting, by virtue of the provisions now found in R. S. 1930, Sec. 20, Chap. 144, but then in effect, with Counsel he appeared before the municipal court and "unconditionally withdrew his appeal" and "surrendered himself to the jurisdiction of the Court," whereupon the judge of that Court "required payment of the fine and costs" and then entered upon the record the notation "continued for sentence." No new bail was given or offered.

At the following term of the appellate court, the principal and bail were defaulted, and judgment of the lower court affirmed. Mittimus and scire facias were ordered to issue.

This suit was begun March 18, 1930. Preliminarily we proceed to decide a question of pleading in relation to an amendment allowed to the declaration in this writ of scire facias.

In the appellate court, it appearing that the recognizance recited only that the respondent was "sentenced to pay a fine of $100.00 and to pay the costs of prosecution taxed at $21.37 and amounting to $121.37, and to stand committed until said fine and costs are paid," the presiding Justice, without objection, allowed it to be amended so as to show that the sentence not only provided for fine and costs, but for imprisonment.

The County Attorney then moved to amend so that the declaration would conform to the amended recognizance, and it was stipulated "that if, in the opinion of the Law Court, said motion was allowable, it should be considered that the amendment was made."

This motion is allowable, and so, in accordance with the stipulation, it shall be considered that the amendment is made. "A writ of scire facias is unquestionably amendable in the same manner as declarations in other cases." *Marsh Brothers & Co.* v. *Bellefleur*, 108 Me., 354, 356; *Beane* v. *Ingraham, et al.*, 128 Me., 462, 463. The omission through clerical error to include in the declaration a portion of the original recognizance is a defect of form and therefore by statute amendable. R. S. 1930, Sec. 11, Chap. 96.

No question as to liability of the principal is raised. Counsel for the defendants states in his brief: "The question as presented in this case is whether or not the sureties are liable upon the above state of facts." Their contention is "that he (meaning the principal) was properly before the magistrate for the withdrawal of the

appeal and that when the Judge allowed him to go without day the sureties were discharged from their obligation."

Upon sentence, appeal therefrom and the taking of the recognizance, the jurisdiction of the lower court ceased "unless the appeal be withdrawn as and in the manner authorized by statute." *Cote* v. *Cummings*, 126 Me., 330, 334; *State* v. *Houlehan*, 109 Me., 281. Without the aid of statute, it could not accept withdrawal of the appeal or receive the respondent back into custody for any purpose in connection with the case. At common law, the surrender, either personal or by the sureties, can not be made to the lower court, although the recognizance is still in its possession. *Stegars* v. *State*, 2 Blackf. (Ind.), 104; *Bird* v. *Terrell*, 128 Ga., 386, 57 S. E., 777.

Sec. 20, Chap. 144, R. S. 1930, then and now in effect, provided that: "The appellant may, at any time before such copy has been sent to the appellate court, come personally before such magistrate, who may permit him, on motion to withdraw his appeal and abide by the sentence appealed from; whereupon, he shall be ordered to comply with said sentence and the sureties taken upon the recognizance upon such appeal shall be discharged."

Two Maine cases have dealt with this statute.

In *State* v. *Houlehan*, supra, the trial court admitted a docket entry from a municipal court, purporting to show that the respondent previously in another action had been convicted on a charge of search and seizure, that he appealed, furnished sureties for his later appearance in the superior court, and that subsequently thereto the lower court nol prossed the sentence as to imprisonment and allowed the respondent to pay the fine and costs. An exception was taken to the admission of this evidence which was sustained, our Court saying: "If, then, the Judge of the Municipal Court has no power after imposition of sentence save in strict accordance with statute in matters of appeal, any entry he may make upon his docket or cause to appear as of record of an act respecting the person and case not within his statutory powers regarding the appeal is as much beyond his power as the act itself." It will be noted that the language of the Court is restrictive. It is not stated that everything that the Court does in connection with the withdrawal of the appeal is null and void. All it holds is that as

under the statute the lower court had no right to change the original sentence from fine and jail to fine only, so the docket entry showing such change was inadmissible.

In *Cote* v. *Cummings*, supra, subsequently to conviction, appeal therefrom and recognizance, the lower court suspended the imprisonment of the original sentence and placed the respondent on probation for a year. The Court held that this could not be done, "because the powers as to sentences conferred by the probation act . . . were for judicial consideration at the time the sentence was imposed" and said: "When the sentence had been imposed and the session ended, as it was ended in this case, the time for such consideration had passed and the only power left for the Judge on August 31st, when the appeal was withdrawn, was the statutory power to order compliance with the sentence which had been imposed." In that case the Court was dealing only with the matter of sentence and the words "only power" in the opinion refer only to the power of the Court as to sentence.

Neither *State* v. *Houlehan* nor *Cote* v. *Cummings* holds that the lower court before which the respondent appeared to withdraw his appeal, and to which Court he surrendered himself, did not have lawful custody of him.

"In the theory of the law, by a recognizance of bail in a criminal action the accused is committed to the custody of the sureties as to jailers of his own choosing, and in so far placed in their power that they may at any time arrest him on recognizance and surrender him to the Court." *U. S.* v. *Lee*, 170 Fed., 613, 614, 6 C. J., 952, footnote 14.

"One charged with a crime when released on bail is, as Blackstone says, delivered into the friendly custody of the surety. 2 Cooley Blackstone, 4th Ed., 1064." *Cook* v. *Harper*, 135 N. E. (Ind.), 349, 350.

By statute no provision is made for the prisoner's personal surrender, except in case of cash bail. R. S. 1930, Chap. 145, Sec. 29. The right, however, exists at common law and upon such surrender, if to the proper Court, the bail is discharged.

Only by reason of Sec. 20 aforesaid did this principal have the right to surrender himself to the lower court, and then only for the purpose of withdrawing his appeal and abiding by the original

sentence. Upon such surrender, he was again in the custody of the law and no longer in that of his sureties. They lost their control of his person; their rights as sureties ceased. Nothing in the contract of suretyship prevented him from exercising his rights under said Section 20.

The consideration moving to the sureties in their suretyship contract was that they should have the custody of the principal and when the obligee, the State, by its Court, received him into its custody, the performance of the condition in the contract was obstructed and interrupted by the act of the obligee and thereby the sureties were released from further performance of the condition.

"Upon the release of a person on bail, he is in the custody of the sureties and the consideration of the bond accruing to the sureties is his freedom from any other custody." *People* v. *McReynolds*, 102 Cal., 308, 36 Pac., 590.

"Their (the bails'). undertaking is based upon the idea that the prisoner is to be in their keeping and under their control, but here the control and keepership are both placed absolutely beyond their reach by the action of the Court at the instance of the State, which now seeks to make the defendant responsible for the laches of its own officers. We know no principle of law by which this can or ought to be done. The law enforces no duty where the power to perform has been taken away or divested by the party in whose favor the obligation exists." *State* v. *Holmes*, 23 Iowa, 458, 461.

"When the Court took charge of the accused and placed him in the custody of its own officer, the power of the bail over him ceased. They had no longer any control over him, and having been deprived thereof by the act of the Court, they were no longer answerable for his appearance for any purpose whatever." *Commonwealth* v. *Coleman*, 2 Met. (Ky.), 382.

"The law does not contemplate that the surety shall be responsible for the appearance of a prisoner in the lawful custody of the law. It is to be presumed that the arrest and custody takes the place of the bail to secure appearance. The surety being discharged of liability, we know of no law which will permit the obligation to be again imposed upon him without his consent." *State* v. *Orsler*, 48 Iowa, 343.

"Here, after indictment found, the Judge issues a Bench War-

rant over his own signature and seal ordering an arrest. That arrest was made, the principal was in the custody of the sheriff and escaped. It would, as it seems to us, be an outrage to charge the original securities with this escape. He was in the lawful custody of the sheriff. The securities could not control him. He was held by the sheriff for this very crime."*Smith* v. *Kitchens*, 51 Ga., 158, 21 Am. Rep., 232.

The Court, having lawful custody, custody neither actual nor constructive remained in the sureties. The Court had this custody, not only with the right, but the statute-imposed duty, to order the respondent, his appeal having then been withdrawn unconditionally, to comply with the original sentence. The respondent complied fully with this statute but the Court did not. Had the Court performed its duty, the sureties would have been discharged. Are they to be denied their discharge, to be penalized, not for the fault of the principal nor their own, but for the fault of the Court itself?

This case is distinguishable from one where the principal is subsequently arrested on another charge, imprisoned, and later escapes, in which the sureties are still held to liability, for they contract as against such an unlawful act as willful escape.

"When the bail is given in a criminal case, the only undertaking of the State is not to deprive the surety of the custody of the principal so far as the particular offense is concerned. *Wheeler* v. *State*, 38 Tex., 173. A subsequent legal arrest of the principal for the same offense as that for which the bail was given operates to discharge the sureties." *Weever* v. *State*, 56 Iowa Apps., 394, 105 N. E., 517; *Commonwealth* v. *Skaggs*, 152 Ky., 268, 153 S. W., 422, 44 L. R. A. (N. S.), 1064. "The rule is otherwise where the subsequent arrest is for another offense. Under such circumstances the arrest does not ipso facto discharge the surety. When bail is given the State assumes no obligation not to make a subsequent arrest of the accused for other offenses." *Cook* v. *Harper*, supra.

Here the principal's enlargement was due to no unlawful act upon his own part. The State, by its Court, was responsible therefor. "Ordinarily the escape is a deliberate unlawful act on the part of the prisoner and the sureties take the risk of such acts on the part of the person bailed, but do the sureties also take the risk of

connivance in the unlawful act by the State authorities? We think not. Such a conclusion is beyond all reason, for it amounts to the proposition that the sureties take the risk that the other party to a contract may hinder or prevent performance of their obligations." *People* v. *Myers, et als.*, 8 Pac. (2d), (Cal.), 837.

To hold these sureties liable would make them responsible not only for the return of the prisoner to the custody of the law but for the faithful performance of the Court's statutory duty after such return, over which the sureties have no control. If such a Court itself is not liable to one wronged, where having jurisdiction it exceeds its rights, unless it acts in bad faith (*Rush* v. *Buckley*, 100 Me., 322, at page 331), it would be unreasonable and unjust to place responsibility upon the sureties for the error of the Court. Such responsibility they did not contract to assume.

State's Counsel, in his able brief, contends that "The sentence so imposed was therefore beyond the jurisdiction of the magistrate and the whole proceeding whereby respondent attempted to withdraw his appeal was absolutely void and of no effect." With this we can not agree. The lower court had jurisdiction both of the person and the subject matter. The subject matter, under Section 20, was the withdrawal of the appeal. "Proceedings of a court may be valid in part and void as to the residue, as where its action in some part is within its jurisdictional powers, while in other parts its action is without jurisdiction." 15 C. J., Sec. 5, page 733.

"The distinction must be observed between mere excess of jurisdiction and the clear absence of all jurisdiction over such matter." *Rush* v. *Buckley*, supra.

In this case the Judge of the lower court, having jurisdiction as above stated, exceeded his rights when he continued the case for sentence instead of ordering the respondent to comply with the original sentence. That done in excess of jurisdiction, however, did not invalidate his acts performed within his jurisdictional rights, in which was included the right to receive him into the custody of the law.

The United States Supreme Court, in deciding a case in which the Judge, having jurisdiction of the person and the subject matter, exceeded his right as to sentence, sentencing the respondent to a penitentiary when clearly there was no right so to do, said: "It

is plain that such Court has jurisdiction to render a particular judgment only when the offence charged is within the class of offences placed by the law under its jurisdiction; and when, in taking custody of the accused, and in its modes of procedure to the determination of the question of his guilt or innocence, and in rendering judgment, the Court keeps within the limitations prescribed by the law, customary or statutory. When the Court goes out of these limitations, its action, to the extent of such excess, is void. Proceeding within these limitations, its action may be erroneous, but not void." In re Bonner, 151 U. S., 242, 256, 257.

Justice Field, in the same case, further said (see page 258) : "If the Court is authorized to impose imprisonment, and it exceeds the time prescribed by law, the judgment is void for the excess." In that case the prisoner was discharged on habeas corpus on the ground that the Judge's act as to sentence was in excess of his jurisdiction; but, nevertheless, the Court decided that the proceeding was void only as to the excess and held that the respondent so discharged could be brought back into the sentencing court for sentence in accordance with the law. In this connection, the Court said: "In a vast majority of cases the extent and mode and place of punishment may be corrected by the original court without a new trial, and the party punished as he should be whilst relieved from any excesses committed by the court of which he complains. In such case the original court would only set aside what it had no authority to do and substitute directions required by the law to be done upon the conviction of the offender."

While it is not essential to the decision in this case, we do state that we see no reason why the error committed by the lower court while acting under said Section 20 could not be corrected by return of the respondent to such court for an order, as provided by statute, for compliance with the original sentence.

"It is a general principle of law that where the performance of the condition of a bond or recognizance has been rendered impossible by the act of God or of the law, or of the obligee, the default is excused. . . . There is a diversity says Brian, Ch. J., where a condition becomes impossible by the act of God, as death, and where by a third person, or stranger, and where by the obligor, and where by the obligee; the first and last are sufficient excuses of forfeiture,

but the second is not; for in such case the obligor has undertaken that he can rule and govern the stranger, and in the third case it is his own act. . . . Baron Comyn lays down the rule, that the performance of a condition shall be excused by an obstruction of the obligee, or by an interruption of the performance by him." *People* v. *Bartlett*, Hill's Reports (N. Y.), vol. 3, page 570.

"It may be stated as the general rule that where performance of the condition of the undertaking of bail is excused or rendered impossible by an act of God, of the obligee, or of the law, or where, from the last cause, the risks of the sureties are increased or their remedy against the principal affected, they are discharged; and this may take place without discharging the principal." 6 C. J., Sec. 279, page 1025.

However, "if the surrender of the principal is prevented by any fault of the surety in connection with the act of God, or of the government, or of a sentence of the law, he will not be discharged." *State* v. *McAllister*, 54 N. H., 156.

Very many cases could be cited in support of the general doctrine above stated as to discharge of sureties for impossibility of performance. They may be found collated in 3 R. C. L., Sec. 58, page 49; 6 C. J., Sec. 279, page 1025; likewise in 23 L. R. A. (N. S.), 137; 50 L. R. A. (N. S.), 255; 30 L. R. A. (N. S.), 211, in which are exhaustive notes with citations dealing with the liability of bail where a principal fails to appear through no fault of his own.

It should here be noted that our holding in this case is not in conflict with the decision in *State* v. *Leo*, 128 Me., 441. In the Leo case the impossibility of performance (death) was subsequent not only to the default of the bail but the commencement of the action of scire facias. To our knowledge, no case in Maine has decided that impossibility of performance before the time for performance, due to the act of God, or of the law, or of the obligee, does not discharge the surety.

The sureties in this case by operation of law were discharged when the principal, availing himself of his statutory right, seasonably surrendered himself into the custody of the municipal court, unconditionally withdrew his appeal, and submitted himself to the possibility of an order of compliance with the original

sentence. The acceptance of such custody was within the right and jurisdiction of the Court and its failure to order such compliance as to sentence, accompanied with its continuation of the case for sentence, contra to the statute, was simply an act in excess of its jurisdiction which did not invalidate its previous reception of the principal into its custody.

*Judgment for State against defendant Parent. Judgment for defendants Ayoob and Dorsey.*