### In the Matter of George Adrien Paquette.

May Term, 1942.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed July 15, 1942.

*J. H. Macomber, Jr.* for the petitioner.

*Alban J. Parker,* Attorney General, for the petitionee.

MOULTON, C. J.  This is a writ of *habeas corpus,* directed to the Warden of the State Prison, by which the petitioner seeks to test the legality of his confinement in that institution.  The facts are not in dispute.

On December 7, 1938, having been convicted of grand larceny, the petitioner was committed to the State Prison for a term of six to ten years.  Some time thereafter it was represented to the Governor of this State that the petitioner was an alien and subject to deportation.  The petitioner also believed this to be so, and in

writing stated that he was willing to waive his right to a decision upon the issue and asked to be deported, if released from prison. Solely in contemplation that deportation from the United States would follow, the Governor granted the petitioner a conditional pardon, dated July 25, 1941, which, in addition to the usual conditions as to good behavior and report to the probation officer, provided that: "This conditional pardon shall be effective Aug. 8, 1941, upon deportation warrant being served and federal officer taking custody." The pardon was accepted by the petitioner in writing, as required.

Deportation proceedings were instituted under the laws of the United States, and on August 8, 1941, a warrant was served upon the petitioner and he was taken into custody by a federal officer, being thereupon released from the State Prison. He remained in federal custody until December 4, 1941, when the deportation proceedings were cancelled or dismissed, and he was forthwith arrested and returned to the State Prison on an executive warrant signed by the Governor in which it was charged that he had "violated the conditions of his pardon in this: Relinquishment of Federal custody and cancellation of deportation proceedings."

By P. L. 8888 it is provided that: "The Governor, in his discretion, may grant a pardon for offenses against the State upon such conditions as he judges proper. Until a person to whom such conditional pardon is granted is excused from the conditions thereof, the Governor shall have all the authority, rights and powers over and in relation to such person which he would have if he were surety in the case upon the recognizance of such person before conviction, and he shall be the sole and exclusive judge as to whether such conditions have been violated. If, in the judgment of the Governor, such conditions have been violated, he may cause such person to be apprehended and returned to his former condition of custody that execution of sentence may be complied with." The pardon contains the stipulation that: "Upon consideration of the Governor . . . that you have violated and failed to perform the foregoing conditions this pardon shall become void, and you shall be apprehended and forthwith returned to your former condition of custody—upon a warrant issued for that purpose by the Governor. . . ."

██ By his acceptance of the pardon the petitioner volun-

444

tarily submitted himself to the conditions stated in it and was bound by them. *In re Conditional Discharge of Convicts*, 73 Vt. 414, 423, 51 Atl. 10, 56 L. R. A. 658; *In re Gordon*, 105 Vt. 277, 279, 165 Atl. 905. He was also bound by the provisions of the statute under which the executive clemency was extended to him. *Fuller* v. *State*, 122 Ala. 32, 26 So. 146, 45 L. R. A. 502, 504, 82 Am. St. Rep. 1. The terms of the pardon and of the statute in pursuance of which it was granted gave the petitioner no right to notice and hearing as a condition precedent to his arrest and recommitment. *Muckle* v. *Clarke*, 191 Ga. 202, 13 S. E. 2d 339, 341; *Fuller* v. *State*, 122 Ala. 32, 26 So. 146, 45 L. R. A. 502, 503, 504, 82 Am. St. Rep. 1; *Owen* v. *Smith*, 89 Neb. 596, 131 N. W. 914; *Woodward* v. *Murdock*, 124 Ind. 439, 24 N. E. 1047, 1048; *State ex rel. Davis* v. *Hunter*, 124 Iowa 569, 100 N. W. 510, 104 A. S. R. 361, 364; *Arthur* v. *Craig*, 48 Iowa 264, 30 A. R. 395, 398; *Kennedy's Case*, 135 Mass. 48, 53-4; and see *State ex rel. O'Connor* v. *Wolfer*, 53 Minn. 135, 54 N. W. 1065, 19 L. R. A. 783, 787, 39 A. S. R. 582. In this there was no violation of his constitutional rights. *In re Ridley*, 3 Okl. Cr. 350, 106 Pac. 549, 26 L. R. A. (N. S.) 110, 116; *Fuller* v. *State*, 122 Ala. 32, 26 So. 146, 45 L. R. A. 502, 503, 82 A. S. R. 1; *Fleenor* v. *Hammond*, 6 Cir., 116 F. 2d 982, 132 A. L. R. 1241, and *People* v. *Moore*, 62 Mich. 496, 29 N. W. 80, holding the contrary, are opposed to the great weight of authority, and we do not follow them. See cas. cit. Annotations 132 A. L. R. 1257; 54 A. L. R. 1483.

Although the Governor is constituted the sole and exclusive judge as to whether the conditions of the pardon have been violated, he may not, in the absence of statutory authority, designate something as a breach of condition where no such condition is expressed in the pardon or recommit the pardoned convict where it concededly appears that the conditions have been complied with. In the absence of statute a conditional pardon once delivered and accepted can be revoked only upon violation of its stated conditions. *Ex Parte Rice*, 72 Tex. Cr. R. 587, 162 S. W. 891, 900, 901; *Ex parte Williams*, 149 N. C. 436, 63 S. E. 108, 22 L. R. A. (N. S.) 238, 240, and anno. 22 L. R. A. (N. S.) 239.

The provision that the pardon should be effective August 8, 1941, upon deportation warrant being served and federal officer taking custody of the petitioner, was a condition precedent to its

validity. It is not questioned that this condition was fully complied with. The pardon, therefore, came into effect and, unless there has been a breach of some condition subsequent according to its terms, or some other legal justification for its revocation or avoidance, it is still in effect.

It is claimed that the fact that the pardon was granted solely in contemplation that the petitioner would be deported made his actual deportation an implied condition subsequent, which has not been fulfilled.

■ But a pardon is to be taken most beneficially for the recipient and most strongly against the authority by which it is granted, wherever its meaning is in doubt. 1 Bishop, New Criminal Law (8 Ed.) Para. 908 (1) ; 4 Blackstone Comm. 401; *Lee* v. *Murphy,* 22 Gratt (Va.) 789, 12 Am. Rep. 563, 571; *United States* v. *Debruyn,* 8 Fed. 2d 319, 320. As it is an act of grace, limitations upon its operation should be strictly construed. *Osborn* v. *United States,* 91 U. S. 474, 23 L. Ed. 388, 389. This pardon is clear and unequivocal in its terms; even if it were ambiguous the petitioner would be entitled to the benefit of a favorable construction. We cannot read into it the unexpressed condition that the petitioner should be deported nor can we regard this contemplated result as an implied condition under the rule of construction above mentioned.

The language of P. L. 8888 that ''the Governor shall have all the authority, rights and powers over and in relation to such (conditionally pardoned) person which he would have if he were surety in the case upon the recognizance of such person before conviction,'' taken by itself, would lead to the conclusion that his power to revoke a conditional pardon is not limited by the violation of the conditions only. In the eye of the law, the conditionally pardoned convict is looked upon as being constantly in the custody of the Governor, who is regarded as his jailer and has ''him always upon a string that (he) may pull at pleasure.'' *In re De Palo,* 101 Vt. 510, 513, 144 Atl. 678, 679. A surety on recognizance may at any time, either personally or by agent, arrest and surrender his principal. *Worthen* v. *Prescott,* 60 Vt. 68, 72-3, 11 Atl. 690; *Taylor* v. *Taintor,* 16 Wall. 366, 21 L. Ed. 287, 290; *Reese* v. *United States,* 9 Wall. 13, 19 L. Ed. 541, 544; *State* v. *Parent,* 132 Me. 433, 172 Atl. 442, 444; *Nichols* v. *Ingersoll,* 7 Johns. (N. Y.) 145, 155; and see P. L. 2494.

But in construing a statute a clause cannot be separated from its context. Every part must be considered, and, if possible, effect must be given to every word, clause and sentence. *In re Cornell*, 111 Vt. 454, 459, 18 Atl. 2d 151, and cas. cit.; *Petraska* v. *Nat. Acme Co.*, 95 Vt. 76, 79, 113 Atl. 536; *Morse* v. *Tracy*, 91 Vt. 476, 479, 100 Atl. 923. So the provision of P. L. 8888, placing the Governor in the position of a surety on recognizance, is to be read in connection with the remainder of the sentence ''and he shall be the sole and exclusive judge as to whether such conditions have been violated,'' and also in connection with the next following sentence giving authority to the Governor to cause the apprehension and return to custody of the paroled convict if in his judgment the conditions of the pardon have been violated. Neither of these two provisions are necessary or of any independent force if the Governor has the wide authority of a surety on recognizance, in pursuance to which he may act without regard to any violations of the conditions, since, obviously, the greater power includes the less. If it had been the intention of the Legislature that this should be so, it is reasonable. to suppose that all reference to conditions and their breach would have been omitted from the act; for nothing would have been added thereby to the authority otherwise conferred upon the Governor.

Moreover, a statute is to be construed with reference to its manifest object and if the language is susceptible of two constructions, one of which will carry out and the other will defeat such manifest object, it should receive the former construction. *Whiting Co.* v. *City of Burlington*, 106 Vt. 446, 463, 175 Atl. 35; *Martin* v. *Fullam*, 90 Vt. 163, 171, 97 Atl. 442. A conditional pardon, which is of the same nature as a parole, has for its object the reformation of the convict. *In re Parker*, 107 Vt. 463, 470, 181 Atl. 106; *In re Gordon*, 105 Vt. 277, 279, 165 Atl. 905; *In re Hall*, 100 Vt. 197, 202, 136 Atl. 2. As in the case of probation with suspended sentence, the aim is ''to bring one who has fallen into evil ways under oversight and influences which may lead him to a better living.'' *Belden* v. *Hugo*, 88 Conn. 500, 504, 91 Atl. 369, 370. This is illustrated by the conditions of the pardon itself, binding the convict to live honestly, soberly and industriously, to obey the law and regularly to report to the State Probation Officer, with the implied promise that so long as he does so he may

remain at liberty. To say that, no matter how fully he observes the rules of conduct imposed upon him, there is still suspended over his head a sword of Damocles in the form of an arbitrary power to remand him to prison at will would be to give a construction to the act at variance with its obvious beneficent purpose, and might well tend to retard rather than to promote his rehabilitation. We hold that the authority of a surety on recognizance with which the statute invests the Governor was intended, and is, to be exercised only in connection with the power to order the arrest and remand to custody, when, in the judgment of the Governor, a condition of the pardon has been violated. It goes no further than this, and affords no independent sanction for the revocation of a conditional pardon in the absence of a breach of condition.

█ It appears that the Governor was misinformed, as a result of which he was led to believe that the petitioner was a deportable alien, and, in consequence, granted the pardon. A pardon which has been obtained by means of fraud, whether consisting in suppression of truth, or suggestion of falsehood, is void. *Commonwealth* v. *Halloway,* 44 Pa. 210, 84 A. D. 431, 435; *Knapp* v. *Thomas,* 39 Ohio St. 377, 48 A. R. 462, 469; *Rosson* v. *Stehr,* 23 Tex. Cr. R. 287, 4 S. W. 897; *State* v. *McIntyre,* 1 Jones Law 1, 46 N. C. 1, 59 A. D. 566, 568-9; *Adkins* v. *Commonwealth,* 232 Ky. 312, 23 S. W. 2d 277, 278; *State* v. *Leak,* 5 Ind. 359, 362. This is so even though the fraud was not induced by the convict himself, but was practiced by others. *Dominick* v. *Bowdoin,* 44 Ga. 357, 365; *Commonwealth* v. *Halloway, supra*; 1 Bishop, New Criminal Law, (8 Ed.) p. 549, para. 906 (1). The question may be raised upon a petition for *habeas corpus. Commonwealth* v. *Halloway, supra*; *Jamison* v. *Flanner,* 116 Kan. 624, 228 Pac. 82, 35 A. L. R. 973, 977-8.

This principle stems from the statute 27 Edw. III, Cap. 2, (1353) which, so far as is here material, is as follows; "ITEM, Because our Lord the King hath often granted charters of pardon of felonies upon feigned and untrue suggestions of divers people, whereof much evil hath chanced in times past . . . (3) and if after the same suggestion be found untrue, the charter shall be disallowed and holden for none: (4) And the justices before whom such charters shall be alledged, shall enquire of the

448

same suggestion . . . ; and if they find them untrue, then they shall disallow the charters so alledged, and shall moreover do as the law demandeth." An examination of the ancient authorities leaves it somewhat uncertain whether active fraud was required, or whether misinformation given in good faith and in the belief in its truth was considered to be sufficient, to avoid a pardon. See Coke, 3 Inst. 228; Cases of Pardons, (Hil. 29 Eliz.) 6 Co. Rep. 13-a; Anonymous, (Pasch, 13 Car. II) T. Raym. 13, 83 Eng. Reprint 7; 2 Hawkins, Pleas of the Crown, Ch. 37, sec. 8; 4 Blackstone Comm. 400. But the modern decisions are to the effect that intentional falsehood or suppression of truth as to a matter calculated to influence the pardoning authority is necessary. See cases hereinbefore cited. "Yet, this test should be cautiously applied by the courts, for there are few applications for pardons in which some suppression or falsification may not be detected . . . and if departure from rigid accuracy in appealing for a pardon be a reason for cancelling a pardon, there would scarcely be a single pardon that would stand," 2 Wharton, Crim. Proc. Para. 1469.

In the present case there are no facts shown by the record from which fraud is made to appear. As the Governor was honestly mistaken in his belief as to the deportability of the petitioner, so too was the petitioner himself. The source of the Governor's misinformation is not given and it is not to be presumed that it was actuated by fraud. *Colston* v. *Bean,* 78 Vt. 283, 285, 62 Atl. 1015.

The granting of the pardon was an act of mercy. *Woodward* v. *Murdock,* 124 Ind. 439, 24 N. E. 1047, 1048; *United States* v. *Wilson,* 7 Pet. 150, 160, 8 L. Ed. 640, 644; *In re Crump,* 10 Okl. Cr. 133, 135 Pac. 428, 47 L. R. A. (N. S.) 1036, 1040. It may well be that it was misplaced, but under the circumstances of this case it is not for us to strain the quality of that mercy by denying to the petitioner the relief he seeks.

*Judgment that the petitioner is unlawfully restrained of his liberty and he is discharged from custody.*