## Richard Hillier v. Steven T. Noble and Beatrice Noble

[458 A.2d 1101]

No. 376-81

Present: Barney, C.J., Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed February 15, 1983

*Stephen L. Klein,* Rutland, for Plaintiff-Appellee.

*Christopher A. Webber, Jr.,* and *S. Stacy Chapman III* of *Webber and Costello,* Rutland, for Defendants-Appellants.

**Peck, J.** This is a dog bite case. Plaintiff, a minor, instituted this action in negligence against defendants, through his mother as next friend. Defendants were the owners of a dog which, although secured by a relatively short chain, had bitten

plaintiff when he went on their land to retrieve his family cat. The case was tried by jury with verdict and judgment for the plaintiff. Defendants filed various motions at the close of all the evidence: for a directed verdict, and subsequently for a new trial, to set aside the verdict, for judgment notwithstanding the verdict, and for a remittitur. These motions were denied by the trial court. However, it should be noted that the presiding judge indicated in a dissent for which, unfortunately for purposes of review, he gave no specific reason, that he would have granted the motion for a new trial, but he was overruled by the assistant judges. Defendants appealed to this Court, raising several issues for our consideration. We reverse and enter judgment for the defendants.

The evidence in the case at bar, elicited through the various witnesses and exhibits, was squarely in conflict on several points. Nevertheless, taking that evidence in the light most favorable to the plaintiff as the prevailing party, the following significant facts emerge.

Plaintiff was eleven years old at the time of the incident which gave rise to this proceeding. He lived with his mother in an apartment as backyard neighbors to defendants. The latter, husband and wife, were both employed and consequently absent from their home much of the time. They had purchased a dog which they called Sam, a mixture of English Bull and Boxer, to serve as a watchdog for their property but not, as defendant testified without contradiction, as an "attack" dog.

The defendants restrained Sam in their backyard by means of a chain, estimated to be approximately ten to twelve feet in length, attached to his collar at one end, and fastened at the other end to a metal stake driven into the ground to a depth of four feet. The chain was long enough to permit the animal to go into defendants' garage. There was no evidence that he had ever escaped from the chain, although he had managed to break away from an earlier, less secure restraint. On that occasion, while it happened some time before the biting accident, another neighbor returned the dog without incident; the animal had never bitten anyone prior to its attack on the plaintiff.

Consistent with its purpose as a watchdog, Sam customarily barked, growled, and jumped against the end of the chain when anyone entered the defendants' property. Plaintiff was well aware of this propensity; he had witnessed it several

times. He testified that he was afraid of the dog; that, to him, it appeared to want to attack him. Plaintiff was, moreover, fully aware from observation of the length of the chain by which it was secured.

On August 6, 1978, the day prior to the biting incident, plaintiff and a companion were playing with a soccer ball in the former's yard when the ball was accidentally kicked into the defendants' yard. According to the testimony of both boys, defendant Beatrice Noble returned the ball to them, telling plaintiff that thereafter he need not wait for her, but if the ball came into her yard again he could come for it himself. They testified also that she told plaintiff he need not be afraid of the dog; it would not bite him.

Beatrice Noble denied firmly that she gave even this limited permission. For purposes of review, however, we must assume she did; that is the evidence most favorable to the plaintiff. Apparently the jury chose to accept the testimony of the boys.

The following day, August 7th, while defendants were absent, plaintiff went into their yard to get his cat which had strayed there. He was alone, and there was no suggestion that his entry was motivated by a misplaced ball. He did not see the dog who was presumably in the garage. Nevertheless, notwithstanding his claim that he feared Sam, he entered the limits of the area within which the animal's chain permitted it freedom of action. As he turned to pick up his cat, the dog appeared, rushed at him, and bit him on the left arm near the elbow. This proceeding was subsequently instituted to recover damages for the pain and suffering experienced by the plaintiff as a result of the dog's attack. It is probable that the injury was more painful than serious. His total medical expenses, for which no claim was made, did not exceed a hundred dollars; his physician was not called as a witness. The record does not disclose that any permanent injury or disability resulted.

Plaintiff argues that his right of entry on August 7 should be implied from the permission given him to enter in order to retrieve his ball. We are not persuaded by this argument. It is clear from a reading of the transcript that the permission to enter was granted for the sole purpose of recovering a ball if and when it should again go on defendants' land.

The only evidence that any permission at all was given is contained in the testimony of the plaintiff and his friend. Mrs. Noble denied she had given him permission for any purpose. Nevertheless, the testimony of the two boys cannot be construed fairly or reasonably to expand her consent, by implication or otherwise, beyond its expressed limitation, to include either a general license to enter for any purpose, or for another more limited or specific purpose.

A person, including a child, who has permission to enter the property of another for a specific purpose is an *invitee* and is owed certain duties of care by the owner as long as the invitee confines his conduct within the limits of the consent. *Robillard* v. *Tillotson*, 118 Vt. 294, 299–300, 108 A.2d 524, 528 (1954). Because of our holding, we need not discuss at length the nature of those duties here. Nevertheless, when an invitee exceeds the permission given, and either effects an entry for purposes other than that for which the permission was granted, or, after entering, engages in activities beyond the scope of his permission, whatever duty may be owed to him comes to an end. "The duty to an invitee as such is only coextensive with the invitation and when the limits of the invitation are exceeded the duty ceases." *Id.* Plaintiff here was a trespasser, or at most an invitee who exceeded the scope of his invitation.

"Our rule is that the owner or occupant is under no obligation to a trespasser, whether adult or child, to protect him from injury by reason of the unsafe and dangerous condition of the premises." *Trudo* v. *Lazarus*, 116 Vt. 221, 223, 73 A.2d 306, 307 (1950). While there are certain limitations to this rule, they are not applicable on the facts presented here.

Moreover, recognizing that dogs have been accepted traditionally as friends of man and often of great usefulness to him, the courts have commonly rejected the doctrine of absolute liability in dog bite cases. *Carr* v. *Case*, 135 Vt. 524, 525, 380 A.2d 91, 93 (1977). Nor has the doctrine been extended to the mere *ownership* of a dog. The general rule is that "the keeper of a domestic dog is not liable for injuries to persons and property unless the owner had some reason to know the animal was a probable source of danger." *Davis* v.

*Bedell*, 123 Vt. 441, 442–43, 194 A.2d 67, 68 (1963). Stated another way, liability attaches only when "the dog's past behavior has been such as to require a person of reasonable prudence to foresee harm to the person or property of others." *Id.*

Even if defendants were chargeable with knowledge, which does not appear, their obligation in such circumstances became the exercise of reasonable control and restraint of the animal. *Carr* v. *Case*, supra, at 526, 380 A.2d at 93. What greater restraints could have been reasonably or prudently required is difficult to imagine. The law does not yet require that these common household pets be either caged or destroyed.

It is possible to indulge in a number of speculative suppositions. Plaintiff may have been lulled into an unfortunate sense of security by defendant Beatrice Noble's alleged statement that the dog would not bite him, although he testified he was afraid of the animal. Perhaps Mrs. Noble would have made her consent more general had she been asked, or if the original problem had involved more than, or other than, a ball; the fact is, however, she did not. We will not expand whatever limits an owner chooses to impose on an invitee, any more than "rewrite" the plain meaning of contracts; the owner has the right to make an invitation as broad or as limited as he sees fit. It may be also that plaintiff would have received the same injury had he entered again on defendants' premises to retrieve his ball, and recklessly gone within range of the dog's freedom of action. Even if these suppositions are valid however, they do not aid him. The plain uncontradicted facts are that he went on the defendants' land for an unauthorized purpose. Any sense of security he may have felt did no more than lead him to believe he could do something he had no right to do in the first place without danger to his person, that he could exceed the scope of the invitation and trespass with impunity.

An invitation to come upon premises for one purpose does not justify or invite entry for any and all other purposes. *Id.* The facts here are undisputed and, in our view, so conclusive that but one reasonable inference can be drawn fairly therefrom. *LaFaso* v. *LaFaso*, 126 Vt. 90, 96, 223 A.2d 814, 819 (1966). The invitation related only to the recovery of a ball; in exceeding that invitation and entering for a significantly different purpose he became a trespasser to whom defendants

owed no duty as a matter of law. Certainly they had no duty whatever to do any more than they did. The evidence here, primarily the testimony of the plaintiff himself and his friend, does not justify an opposing inference. *Id.* Defendants' motions for a directed verdict or for judgment notwithstanding the verdict should have been granted below and must now be entered here for the defendants.

Because of our disposition of the case it is unnecessary to address other issues raised by defendants.

*Reversed. Judgment for the defendants.*