## State of Vermont v. Ronald Kreth

[553 A.2d 554]

No. 86-002

Present: **Allen, C.J., Peck, Dooley and Mahady, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed September 16, 1988

*Marc D. Brierre, Rutland County Deputy State's Attorney,* Rutland, for Plaintiff-Appellee.

*Walter M. Morris, Jr., Defender General,* and *William A. Nelson, Appellate Defender,* Montpelier, for Defendant-Appellant.

**Dooley, J.** The defendant in this case was convicted of violation of our criminal trespass law, 13 V.S.A. § 3705(d). The essential facts are that defendant, after drinking heavily, drove off the road during a severe winter storm. He entered an empty private dwelling house, apparently by breaking in the back door, and was found by one of the owners of the house the next morning. After a jury trial, defendant was convicted of criminal trespass. In this Court, he makes a number of arguments about the charging information, the jury instructions and the adequacy of the evidence. We agree that the information is defective and reverse without reaching defendant's other claims.

The statute under which defendant was charged provides:

> (d) A person who enters a dwelling house, whether or not a person is actually present, knowing that he is not licensed or privileged to do so shall be imprisoned for not more than three years or fined not more than $2,000.00, or both.

13 V.S.A. § 3705(d). The information in the case charged:

> That Ronald August Kreth of Danby at North Clarendon in this county and territorial unit on the 4th or 5th day of March, 1985 did then and there enter a dwelling house knowing he was not privileged to do so, to wit, the Nancy J. Meszaros and Mark A. Meszaros residence.

With one exception, the information tracked the statute. The exception is that it charged defendant with entering while knowing that he was not privileged to do so, but failed to charge — as set out in the statute — that he knew he was not licensed to enter. Because of this difference, defendant argues that the information failed to charge him with a crime and any conviction based on the information must fail. Defendant raises this argument for the first time in this Court.

The requirements on the content of an information are set out in Criminal Rule 7(b). Under the rule, "the information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." V.R.Cr.P. 7(b). The Reporter's Notes indicate that the rule is intended in part to simplify criminal pleading requirements but it is still necessary that the information "contain the elements of the offense." Reporter's Notes, V.R.Cr.P. 7. Indeed, this requirement remains to satisfy the requirements of Chapter I, Article 10 of the Vermont Consti-

tution and the Sixth Amendment to the United States Constitution that the defendant be informed of the cause and nature of the accusation against him. See *State v. Phillips,* 142 Vt. 283, 288, 455 A.2d 325, 328 (1982).

An information that omits an essential element of the crime charged is defective and cannot serve as the basis of a conviction. *State v. Bradley,* 145 Vt. 492, 495, 494 A.2d 129, 132 (1985). In *Bradley,* the defendant was sentenced for driving with her license suspended under a provision requiring a minimum jail term. The provision applied only if defendant's license had been suspended for certain specified reasons. The information charging defendant did not specify the grounds under which defendant's license had been suspended. The Court found that the information was defective and could not serve as a basis for imposition of sentence under the mandatory jail time provision. Because the challenge was to the sufficiency of the information, the Court held that it could be raised for the first time on appeal. *Bradley,* 145 Vt. at 494, 494 A.2d at 131; see also V.R.Cr.P. 12(b)(2) (defenses based on defects in the information must be raised prior to trial unless they show lack of jurisdiction or failure to charge an offense); *Phillips,* 142 Vt. at 290, 455 A.2d at 329.

*Bradley* governs in this case unless there is something about this information that saves it. The State argues that there is a ground to distinguish this case — that is, that the terms "licensed" and "privileged" are practically synonymous so that "stating both licensed and privileged in the body of an information serves no valid or rational purpose." There is some force to the State's argument. Black's Law Dictionary defines "license" in the context of entry on real property as a "personal or revocable privilege to perform an act or series of acts on the land of another." Black's Law Dictionary 830 (5th ed. 1979). A "licensee" is defined as "[a] person who has a privilege to enter upon land arising from the permission or consent, express or implied, of the possessor of land . . . ." *Id.* A "privilege" in tort law is a rule "of law by which particular circumstances justify conduct which otherwise would be tortious . . . ." *Id.* at 1078.

The Restatement of Torts follows similar definitions. The definition of "privilege" notes that a privilege can be based on "the consent of the other affected by the actor's conduct" or on another overriding interest. Restatement (Second) of Torts § 10(2) (1965). In the context of trespass to land, the Restatement

equates license with present or past consent. See, e.g., Restatement (Second) of Torts § 167 comment b, §§ 176-184 (1965). The import of the Restatement is that a license is a form of privilege which is based on consent. Thus, when the State argues that the omission of the words "licensed or" from the information is harmless, it has good grounds to claim that the inclusion of the word "privileged" is sufficient to denote both "privileged" and "licensed" and complies with the command of *Bradley* that the essential elements of the offense be stated in the information.

As alluring as the States argument is, we believe there are significant reasons to reject it. We start with a reluctance to find that a part of a statute is surplusage, a necessary finding to accept the State's argument. See *State* v. *Stevens*, 137 Vt. 473, 481, 408 A.2d 622, 627 (1979); *In re Paquette*, 112 Vt. 441, 446, 27 A.2d 129, 132 (1942). Thus, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous . . . ." 2A N. Singer, Statutes and Statutory Construction § 46.06, at 104 (C. Sands 4th ed. 1984) (footnote omitted). It is only when "words seem unnecessary, or have no meaning within the scheme of the statute, or seem to have been inadvertently used, [that] they will be treated as surplusage and disregarded in order to effectuate the Legislative intent." *Stevens*, 137 Vt. at 481-82, 408 A.2d at 627.

Our reluctance to accept the State's argument is heightened because there exists indicia of legislative intent to the contrary. The source of the phrase in issue is § 221.2(1) of the Model Penal Code adopted by the American Law Institute in 1962. While its provision on criminal trespass is somewhat different than ours, the essential similarity is that the offense defined in § 221.2 is committed only if the trespass is done by a person "knowing that he is not licensed or privileged to do so." Model Penal Code § 221.2(1) (1980). A similar phrase is found in the Model Penal Code's burglary definition. See *id.* at § 221.1(1).

The comment to § 221.2 suggests that the authors intentionally included the dual elements of license and privilege. The comment states that "[t]he knowledge requirement is designed primarily to exclude from criminal liability both the inadvertent trespasser and the trespasser who believes that he has received an express or implied permission to enter or remain." See *id.* at § 221.2 comment 2(a). Presumably, the latter situation involves licensed entry while the former involves privileged entry. The comment to

the burglary section draws a similar distinction. See *id.* at 221.1 comment 3(a) (applies to cases where an employment or ownership interest authorizes entry, or to other circumstances where privilege can be inferred).

The Model Penal Code sections, or variations on them, have been adopted in a number of states. While the decisions are not entirely consistent, they generally support the interpretation that "licensed" refers to a consensual entry while "privileged" refers to a nonconsensual entry. Thus, in *Commonwealth* v. *Starkes,* 268 Pa. Super. 108, 112-13, 407 A.2d 853, 855 (1979), the court faced a charge that defendant committed a burglary and analyzed the issue as one of possible privilege or license. Cf. *People* v. *Crowell,* 122 Misc. 2d 133, 470 N.Y.S.2d 306 (Oswego County Ct. 1983) (the distinction between license and privilege may determine when the right to be on the premises is terminated); *People* v. *Czerminski,* 94 A.D.2d 957, 464 N.Y.S.2d 83 (1983) (privilege to be on premises expired). In *State* v. *Thaxton,* 120 N.H. 526, 528, 419 A.2d 392, 393 (1980), the court used the common law to define one as privileged to enter "if he may naturally be expected to be on the premises often and in the normal course of his duties or habits." See also *Commonwealth* v. *Corbin,* 300 Pa. Super. 218, 222-24, 446 A.2d 308, 311 (1982) (adopting *Thaxton* definition). Finally, in *State* v. *Thibeault,* 402 A.2d 445, 448 (Me. 1979), a case involving an entry with consent, the court found only the language on license to be relevant to determine whether the defendant committed a burglary.

The application of the Model Penal Code language in those states that have adopted it in relevant part, as well as the comments to the code language, suggest strongly that the wording was used to draw a common sense line between consensual and lawful nonconsensual entries on land. For the foregoing reasons, we cannot say that the element of knowledge of lack of license is surplusage in the statute in that its inclusion seems to be neither inadvertent nor "repugnant to what [we find], on the basis of other indicia, to be the [L]egislative intent." 2A N. Singer, Statutes and Statutory Construction § 46.06 (C. Sands 4th ed. 1984) (footnote omitted). Accordingly, the omission of this element in the information is fatal to this case.

*Reversed.*

**Peck, J.**, dissenting. My first impression upon considering the result reached in this case and, more particularly, the rationale which purports to explain it, was, that the majority was indulging in a sort of erudite leg-pull; a pleasant pastime for legal pundits in satirizing the obscurity, law-jargon, formulas, and state-of-the-art patter so typical of some judicial opinions. Here, thought I, for a brief amused moment, is a worthy successor to Sir William S. Gilbert's libretto for "Trial by Jury."

My amused euphoria was short-lived; satire was not the intent at all. The majority is in dead earnest. In the name of the presumption against surplusage in statutory language (which is not valid here in any event) the majority concludes that the words "licensed" and "privileged," as they appear in 13 V.S.A. §. 3705(d), are not synonymous. In other words, the connecting "or" is used grammatically to introduce the second of two possibilities (see any standard dictionary). The opinion gives no consideration to the more cogent presumption that the legislature did not intend an absurd result, *State* v. *Rice,* 145 Vt. 25, 34, 483 A.2d 248, 253 (1984), or an irrational result, *id.,* or an unreasonable result, *Lubinsky* v. *Fair Haven Zoning Board,* 148 Vt. 47, 50, 527 A.2d 227, 228 (1986). Nor does the majority show any interest in plain meanings, preferring instead to reach a predetermined conclusion in the only way it can — a laborious exercise in legal semantics.

Today's result will, of course, be greeted with cheers by would-be trespassers. The opinion makes it exceedingly difficult, if not a practical impossibility, to prosecute anyone successfully under § 3705(d). I have some difficulty in accepting such a consequence as being compatible with the intent of the legislature; it is as absurd as it is unreasonable. Even assuming (arguendo only) that the attempt to make a distinction between the words "licensed" and "privileged" has a facial validity, this Court has said:

> Even the very words used by the legislature in the enactment must yield to a construction consistent with legislative purpose. *In re Preseault,* 130 Vt. 343, 348, 292 A.2d 832, 835 (1972). As that case points out, we operate on the presumption that no . . . unreasonable result was intended by the legislature.

*Lubinsky,* 148 Vt. at 50, 527 A.2d at 228.

I think it can also be assumed that the legislature intended to enact a law which could be enforced with at least reasonable facil-

ity, without the need for endless nit-picking at the meaning of words between prosecution and defense, abetted by vague, labored, and microscopic distinctions by this Court.

The most regrettable aspect of today's result is that it is not necessary or inescapable; the trial court can, and therefore should be, affirmed. Having, long ago, become infected by the virus of common sense, which persuades me to assume that legislative intent matches the ordinary meaning of the statutory language employed, and guides me away from the use of legalistic smoke screens to support a predetermined result, I cannot but dissent, giving herewith my reasons.

## I.

The majority claims that the words "licensed" and "privileged" as they appear in § 3705(d) are not synonymous; it points to the conjunctive "or," and the presumption against surplusage. However, if that contention is valid, the statute must be describing two distinct ways in which a violation may occur; two distinct offenses: first, the trespasser enters knowing he is not "licensed" to do so, and second, knowing he is not "privileged" to enter. Grammar will admit of no other result.

Except for the structure of § 3705(d), I see no essential difference between it and certain other statutes which proscribe two courses of conduct, either one of which, by itself, constitutes an offense. 23 V.S.A. § 1201(a) comes to mind. Both (a)(1) and (a)(2) of the statute relate to drunk driving; moreover, they are, like the two parts of 13 V.S.A. § 3705(d), connected by the conjunctive "or." Moreover, this Court has held that the State *may* charge a defendant with a violation of *either or both* § 1201(a) and § 1201(b). *State v. Lund*, 144 Vt. 171, 475 A.2d 1055 (1984).*

It is interesting that when 23 V.S.A. § 1201(a) is involved, there is no requirement that a defendant *must* be charged under *both* (a)(1) and (a)(2), but given the majority's construction of 13 V.S.A. § 3705(d), which holds that "licensed" and "privileged" mean something quite different one from the other, and, therefore, the statute describes two offenses, a defendant must nevertheless not only be charged with both, he must be convicted of

---

* Under § 1201(b), however, a defendant charged under both (a)(1) and (a)(2) may be convicted of only one of these offenses.

both as well, or he is not guilty of anything. This is an absurd result.

Again assuming the validity of the majority's construction, I can agree that if a person is "licensed" to enter another's premises although he may not be otherwise "privileged" to do so, he cannot be convicted of violating § 3705(d). The one cancels out the other. But this is no more than a defense; in effect, a confession and avoidance. It is no different, in essence, than a defense based on necessity or self-defense. In fact, if a prospective defendant can show the authorities that an entry was "licensed" although it may not have been "privileged" (or vice-versa), it is unlikely he will ever be charged at all, or experience the humiliation and the stigma which attaches in some measure to all criminal trials regardless of the outcome. The State has better things to do than to charge its citizens with a crime, unless, in the best judgment of its prosecuting officers, it has good grounds for doing so. In view of the majority's holding, chances for successful prosecution under § 3705(d) are extremely doubtful; an accused must be *charged* and *convicted* of two offenses before he can be found guilty of either.

## II.

Turning to a second ground for my dissent, I would begin by emphasizing that my first argument above is predicated on the arguendo assumption that the majority may be correct in holding that "licensed" and "privileged" are not synonymous, and therefore the statute describes two separate offenses.

In fact, I disagree with that holding. The various books of synonyms as well as the dictionaries tend to confirm their essential similarity. Nor does the fact that they may be synonymous necessarily lead to the majority's hasty conclusion that, if they are, the statute contains a surplusage. The word "or" which, in this case, joins "licensed" and "privileged" is frequently employed to clarify or explain, by the very use of a synonym or synonymic phrase, the meaning of another word, thus: "zoology, *or* the study of animals." Anyone familiar with 18th and 19th century fiction will recall the frequent use of alternative titles joined by "or," as *"Frankenstein or the Modern Prometheus."* Use of the connective "or" does not, per se, create surplusage as claimed by the

majority, nor is its use limited to the introduction of a second possibility.

As long as an applicable license remains in effect, the licensee has the right or *privilege* to operate a motor vehicle, to hunt, fish, practice a profession or an occupation, operate a bar, sell beer or wine, even to marry. All of these, and others, involve privileges resulting from formal licenses granted by a public agency authorized by law to do so.

These instances involve "license" in a formal, public sense. But its meaning is by no means so narrowly limited. In common parlance it may also be used, inter alia, to describe any freedom to deviate from generally accepted conduct, rule or practice. *Webster's New World Dictionary of the American Language* 815 (second college ed. 1979) (but this same "freedom" is also a "privilege in any ordinary, common [and common sense] usage). In a 1983 case involving limitations on permission given to enter a neighbor's land for a specific purpose, this Court said:

> Nevertheless, [the limited permission] cannot be construed fairly or reasonably to expand her consent . . . beyond its expressed limitation, to include either a general *license* to enter for any purpose, or for another more limited or specific purpose.

*Hillier* v. *Noble,* 142 Vt. 552, 556, 458 A.2d 1101, 1103 (1983) (emphasis added).

Similarly, in cases involving the duty of care owed by a landowner to one who enters upon his land with the consent of the former, courts frequently and commonly employ the word "licensee." "Nor is this a case where the injuries were received by a . . . bare *licensee* . . . ." *Trudo* v. *Lazarus,* 116 Vt. 221, 223, 73 A.2d 306, 307 (1950) (emphasis added). "Assuming that she was either a trespasser or a *licensee* . . . ." *Watterlund* v. *Billings,* 112 Vt. 256, 260, 23 A.2d 540, 542-43 (1942) (emphasis added).

The above discussion of "license" in the context of an entry on another's land may seem to track the single-purpose definition dredged up to make it fit the majority's result. However, the ordinary meaning of the word in common American-English is not that narrow or limited, and there is a "presumption that the *ordinary* meaning of the statutory language was intended by the legislature." *State* v. *Hull,* 143 Vt. 353, 354, 465 A.2d 1371, 1372 (1983) (emphasis added).

When we encounter statutory words which the legislature has not found it necessary to define, that alone indicates the ordinary meaning was intended. That is the test which must be applied in the first instance, before ricocheting off on a tangent to create or limit their meanings in order to bolster a preconceived and proffered result. Only when the common and ordinary meaning test cannot fit the subject word into the statute in which it appears is construction warranted and judicial speculating ever justified. It is always dangerous at best; the probability of violating the true legislative intent is considerable; in fact, that is what has happened here.

The word "license" is not limited in common usage. For example, it is even employed to express "excessive, undisciplined freedom." *Webster's New World Dictionary of the American Language* 815 (second college ed. 1979); the word "licentious" derives from it. *Id.* The phrase "poetic license" is not uncommon, and the same is true of other every-day, ordinary uses of "license" as synonymous with, or included in, such words as permission, consent, privilege. Nevertheless, "privilege," while it *includes* "license," is also broader. I submit, therefore, that the use by the legislature of the phrase "licensed or privileged" does not automatically give rise to a redundancy or surplusage. It merely clarifies the legislative intent that the word "license" ia not necessarily to be restricted to a narrow or formal context, but includes as well its broader and less formal sense as included within the meaning of a *privilege*. Since this is consistent with "ordinary meaning," it should control here and preclude any such speculative adventuring as that indulged in by the majority.

Some digressions on the general subject may be helpful. The legal doctrine of "necessity" may, under certain circumstances, confer a license to go on lands of another; this is implicit in *Ploof* v. *Putnam*, 83 Vt. 252, 75 A. 277 (1910). But since the right lacks the authority of a *formal* license or a "license by consent," it is better understood, perhaps, in the "privilege" sense. 19 V.S.A. § 502(a) confers on the Agency of Transportation, upon request of the Transportation Board, the right to enter private lands for "the purpose of examination and making necessary surveys" in connection with highway projects. It is not error to consider this right as a license since it is granted by legislative authority (as are all formal licenses), but certainly it is a privilege, and its status as a license would be clarified by referring to the right as a privilege.

A formal license to hunt confers on the licensee the right or privilege to enter private land (not posted) for that purpose, but the "license" to enter is not from the owner. And this serves also to demonstrate how utterly contrived and preposterous the majority's definition of "license" really is: for purposes of an entry onto real property, says the majority, it means an entry with the *consent* of the owner. What nonsense! *Quod erat demonsrandum.* Finally, considering "license" in the context of freedom to deviate from generally acceptable conduct outside the scope of an entry on land, even an inebriate may be excused from the prohibition against driving under certain emergency circumstances. *State* v. *Shotton*, 142 Vt. 558, 458 A.2d 1105 (1983).

I think the foregoing discussion is more than adequate to establish that, while "license" and "privilege" are interchangeable in common parlance, the former is frequently *used* in a narrower and, at times, a more formal sense although it is *included* in the latter; a license *is*, or confers, a privilege. I conclude therefore that even if these words are properly synonymous, it is wholly unnecessary and improper to conclude that the use of both results in an inescapable surplusage. Defendant was charged with an entry "knowing he was not privileged to do so." This is entirely consistent with a logical, simpler and far more likely intent of § 3705(d) than is the laborious, jerry-rigged construction devised by the majority. In alleging that defendant was not privileged to enter, the complaint did no more than charge that he was not licensed to enter. In short, a license is, and is included in, a privilege.

Peculiarly enough, the majority actually acknowledges this. Quoting Black's Law Dictionary 830 (5th ed. 1979), the opinion states that, in the context of entry on real property, "license" *means* a " 'personal or revocable *privilege* to perform an act or series of acts on the land *of another,*' " and from the same source, and in the same context, a "licensee" is one "who has a *privilege* to enter upon land arising from the permission or consent, expressed or implied, of the possessor of land . . . ." (but for his own purposes rather than those of the owner). *Id.* In addition to its other faults, the opinion is internally inconsistent.

The above quotes from the majority opinion constitute an express recognition of one of the two bases of this dissent. At that point I was hopeful that clear thinking and analysis was about to prevail. Unhappily, it was shortly thereafter that the fatal whop-

per occurs as the majority, in a masterpiece of condescension, finds the State's argument "alluring" but of course it must be rejected because of the majority's reluctance "to find that a part of a statute is surplusage, a *necessary* finding to accept the State's argument." This is just plain wrong; no such finding is at all "necessary."

In searching for an introductory comment for my objection to this bad reasoning, I am grateful for a remark written about the United States Supreme Court by Justice Jackson: "We are not final because we are infallible, but we are infallible only because we are final." *Brown* v. *Allen*, 344 U.S. 443, 540 (1953). I am forced to find what little consolation there may be in this acknowledgement. The statement that it is *necessary* to find surplusage is simply preposterous. I like to think that the majority is capable of better reasoning than that; I am, therefore, at a loss to pinpoint the motive which inspired it: an aid to a preconceived result? An unfortunate hasty and superficial analysis? Whatever the motive, it started the majority down a tortuous path to the incredible result.

Having taken this absurdly wrong turning at the outset, the opinion gropes for help in a tangled morass of tort law, whereas we are involved here with the criminal law, and further floundering about in the Model Penal Code (which is not law in this state) expression of concern for scienter. That is an equally absurd concern; the language of § 3705(d) incorporates the scienter factor clearly and expressly. It applies *only* if the accused enters *"knowing* that he is not licensed or privileged to do so . . . ." (Emphasis added) (I underscore the key word because the majority apparently missed it).

I think it is clear from the jungle which is the majority opinion that, once having rejected the simple synonym theory of the case outlined above, the majority virtually concedes that it cannot make any clear distinction between "license" and "privilege," and so, like Frankenstein, it creates a monster made of bits and pieces of legal lore from various sources, including the assignment of purely artificial concepts to both "license" and "privilege," otherwise unknown, manufactured solely to justify an equally contrived construction of one particular statutory subsection. It restricts the standard and ordinary usage of the words contrary to the long-standing rule of this and other courts: it is presumed the ordinary meaning of statutory language was intended, *State* v.

*Hull,* 143 Vt. at 354, 465 A.2d at 1372; "[w]ords in a statute without definition are to be given their . . . commonly accepted use." *Northern Rent-A-Car, Inc.* v. *Conway,* 143 Vt. 220, 222, 464 A.2d 750, 751 (1983). This fabricated prodigy is then sutured together with judicial rhetoric, and brought to life by the galvanic stimulus of the collegial sanction.

I have indicated above that the consequence of today's decision makes prosecution extremely difficult. In final summary, I can only reiterate that, if the State is required to charge with reference to both license and privilege as separate concepts, endless bickering and drawing of microscopically fine lines are inevitable. It will involve the prosecution, the defense, and the courts in comic-opera attempts to make a clear distinction between two words which can be, and often are, used interchangeably, or the meaning of one included within the meaning of the other, all in both common and formal usage, except for the wonderful penchant of the legal mind to create a formal distinction that exists nowhere else. This, in turn, gives rise to complete and technical obfuscation and long years of confusion and court time. The problems of proof, trying to demonstrate, as separate concepts, both the absence of license and the absence of privilege, are also overwhelming and obscure. I had always assumed, with considerable naivete it would seem, that the first step in statuary construction was to test the wording by the ordinary meaning rule. Of course, in this case, it would have been impossible for the majority to have reached its preconceived result had it done so. Accordingly, the rule was swept under the carpet of an elaborate word game. We are denied the use of plain, everyday American-English, both formal and informal-colloquial, and forced into trying to make sense of that alien tongue known as legalese.

If all this is *necessary,* certainly it must be faced; it is not. Except for the sinister capacity of the judicial mind to create complexities where none exist, we are dealing with a relatively straightforward statute, open to a much more obvious and simple construction which protects all the rights of the accused, including the information needed for his defense. Such a simple construction is also consistent with the presumed intent of the legislature to enact an anti-trespass law that will not be frustrated in its enforcement by judicial nit-picking. "Let who will be clever" — for cleverness' sake; but it should not be the judiciary.

For any relevance it may have, I don't believe there can be the slightest doubt but that defendant knows very well exactly what he had been charged with. Claims to the contrary are extremely technical at best; the majority has once more opened the door which permits a criminal defendant to escape the consequences of his prohibited conduct. The majority is quite adroit at doing that.

I would affirm the conviction.