## Cory J. Zukatis, b/n/f Sheri E. Zukatis, Sheri E. Zukatis and Michael Zukatis v. Michael G. Perry

[682 A.2d 964]

No. 94-593

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 12, 1996

*Thomas W. Costello, John C. Mabie* and *Joel T. Faxon* of *Thomas W. Costello, P.C.*, Brattleboro, for Plaintiffs-Appellants.

*Robert G. Cain* and *William D. Riley* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendant-Appellee.

*Todd S. Brilliant* and *Stephen S. Ostrach*, New England Legal Foundation, Boston, Massachusetts, for Amici Curiae Vermont Farm Bureau and Vermont Horse Council.

**Morse, J.** Plaintiffs appeal from summary judgment granted to defendant under V.R.C.P. 56(b) on counts of negligence and "negli-

gent undertaking," and from dismissal under V.R.C.P. 12(b)(6) of a claim of "attractive nuisance." They argue that the trial court erred in concluding that (1) a landowner owes no duty of care to a trespassing child, and (2) that the facts did not support a claim of negligent undertaking.

As noted above, the trial court dismissed the claim of attractive nuisance on the pleadings but granted summary judgment on the counts of negligence and negligent undertaking. Summary judgment is appropriate only where, taking the allegations made by the nonmoving party as true, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 17-18, 665 A.2d 580, 582 (1995). The standard presupposes that the nonmoving party has had the opportunity to develop his factual case, as plaintiffs did here. We hold that summary judgment should have been granted on all three counts of plaintiffs' complaint, and affirm.

On April 24, 1993, Sheri Zukatis and her three-year-old son Cory were visiting Nora Ellis at Ellis's residence on Pond Road in Vernon, Vermont. At approximately one p.m., Cory and Ellis's son Coleman, accompanied by their mothers, went outside. While the boys played on swings, Ellis's father demonstrated a new video camera for the women. By the time Zukatis looked back toward the boys, Cory was gone. Cory had apparently wandered onto the adjoining property, which belonged to defendant Michael Perry, and crawled through a fence into Perry's horse pasture. Perry's horse, which had not been considered an aggressive animal, kicked and injured Cory.

The horse pasture was fully enclosed by a fence consisting of two strands of wire supported by metal stakes. Though capable of conducting electricity, the wire was not activated that day. Neither Zukatis nor Cory was given permission to enter Perry's land. Coleman Ellis had apparently been specifically forbidden to enter the Perry property after a prior, and never repeated, incident in which he had trespassed. There was no evidence that any other children had ever trespassed on the Perry property.

## I.

The trial court dismissed the claim of attractive nuisance on the pleadings on the basis that the attractive nuisance doctrine is not recognized in Vermont. *Trudo v. Lazarus*, 116 Vt. 221, 223, 73 A.2d 306, 307 (1950). Plaintiffs urge us to overrule *Trudo* and adopt the

attractive nuisance doctrine as set forth in the Restatement (Second) of Torts § 339 (1965).[1]

█ The attractive nuisance doctrine is merely a detailed articulation of ordinary negligence. See *id.* cmt. o. (liability covered by section is liability for negligence). Under the doctrine, a trespassing child is not entitled to a heightened standard of care, but rather, is afforded the protection of the ordinary negligence doctrine. W. Keeton, et al., Prosser & Keeton on the Law of Torts § 59, at 401-02 (5th ed. 1984) (attractive nuisance doctrine gives child trespasser protection of ordinary negligence doctrine); W. Prosser, *Trespassing Children*, 47 Cal. L. Rev. 427, 432 (1959) ("child trespasser law is merely ordinary negligence law"). Thus where a party is not negligent, he cannot be found liable on an attractive nuisance theory. The attractive nuisance is simply one factor to be taken into account with others in determining defendant's negligence.

██ Common law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury. *O'Connell v. Killington, Ltd.*, 164 Vt. 73, 76, 665 A.2d 39, 42 (1995). We have held that a landowner generally owes no duty of care to a trespasser, whether adult or child. *Buzzell v. Jones*, 151 Vt. 4, 6, 556 A.2d 106, 108 (1989); *Hillier v. Noble*, 142 Vt. 552, 556, 458 A.2d 1101, 1103 (1983). We have not seriously reexamined the "no-duty-to-trespassers" doctrine, putting it off to another day in *Buzzell*. 151 Vt.

---

[1] § 339 **Artificial Conditions Highly Dangerous to Trespassing Children**

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339 (1965).

at 7, 556 A.2d at 109 (although other jurisdictions have modified traditional distinctions in duties of care owed to persons entering land, where parties did not brief issue, court will decline to address it). The attractive nuisance doctrine creates an exception to the "no-duty-to-trespassers" rule. It "forthrightly recognize[s] the status of the child as a trespasser, but [] impose[s] a duty upon the landowner *under carefully limited circumstances." Jones v. Billings*, 289 A.2d 39, 42 (Me. 1972); see also Annotation, *Animals as Attractive Nuisance*, 64 A.L.R.3d 1069, 1073 (1975) (attractive nuisance doctrine is exception to rule that owner of premises is under no obligation to keep it in safe condition for trespassers). Plaintiffs evidently believe that recognition of this duty will enable them to proceed with their claims, and therefore urge us to adopt the doctrine. We need not address the issue today, however, because even if defendant owed such a duty of care to Cory, plaintiffs have come forward with no facts from which a jury could reasonably infer a breach of that duty.

## II.

As Professor Prosser once so delicately put it:

Children, as is well known to anyone who has ever been a child, are by nature unreliable and irresponsible people, who are quite likely to do almost anything. In particular, they have a deplorable tendency to stray upon land which does not belong to them, and to meddle with what they find there. In the process they not infrequently get hurt.

Prosser, *supra*, at 427. For the purposes of this analysis, we assume the existence of a duty of reasonable care to protect a trespassing child. The question remains, what is the scope of that duty? See *Dunning v. Kerzner*, 910 F.2d 1009, 1013 (1st Cir. 1990) (general standard of care is matter of law for determination by court); *Mignone v. Fieldcrest Mills*, 556 A.2d 35, 37 (R.I. 1989) (existence and extent of duty of care are questions of law). Simply put, defendant can be found liable only if he has failed to take steps that a reasonable person would take under like circumstances.

All of plaintiffs' claims are grounded on the fact that defendant's fence failed to keep the child out of the pasture. There is no suggestion that it was unreasonable for defendant to have had a horse on his premises at all. Plaintiffs assert that the electric fence should have been activated, though they concede that an electric charge might have injured the child. Their position evidently rests on an

assumption that the fence should have been "child proof." When questioned at oral argument, however, plaintiffs declined to say what defendant should have reasonably done under the circumstances in order to perform his duty of care. Nothing in the facts alleged indicates that defendant's failure to activate the electric wires was unreasonable or that the potential for young children to enter harm's way was substantial enough to warrant "child proofing" the pasture.

The standard of care for the conduct at issue in this case has been variously described. As a general rule:

> "the keeper of a domestic [animal] is not liable for injuries to persons and property unless the owner had some reason to know the animal was a probable source of danger." Stated another way, liability attaches only when "the [animal]'s past behavior has been such as to require a person of reasonable prudence to foresee harm to the person or property of others."

*Hillier*, 142 Vt. at 556-57, 458 A.2d at 1104 (citations omitted) (quoting *Davis v. Bedell*, 123 Vt. 441, 442-43, 194 A.2d 67, 68 (1963)); see also *Jividen v. Law*, 461 S.E.2d 451, 457-58 (W. Va. 1995) (liability for harm caused by animal will not attach unless injured party can show, based on animal's past behavior and characteristics, that injury could reasonably and foreseeably have been anticipated). Here, it is undisputed that defendant's horse was not aggressive. It is also undisputed that the fence was in good repair and effectively restrained the horse. No facts are alleged that would have allowed a jury to conclude that defendant failed to exercise reasonable care in controlling his horse. See *Hillier*, 142 Vt. at 557, 458 A.2d at 1104. Defendant breached no duty to Cory and thus cannot be found liable under either a traditional negligence theory or the attractive nuisance doctrine.

### III.

Plaintiffs next argue that erection and maintenance of the electric fence constituted an undertaking under § 324A of the Restatement (Second) of Torts (1965)[2] and that defendant's failure to activate the electric current in the fence on the day Cory was injured

---

[2] § 324A **Liability to Third Persons for Negligent Performance of Undertaking.**

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical

constitutes a negligent performance of the undertaking. Plaintiffs correctly assert that Vermont has recognized this cause of action. *Derosia v. Liberty Mut. Ins. Co.*, 155 Vt. 178, 182, 583 A.2d 881, 883 (1990). Our reasoning on the attractive nuisance issue disposes of this claim as well, but we agree with the trial court that the undertaking doctrine is inapplicable to the facts of this case.

The tort plaintiffs cite applies only where a defendant has undertaken to render services to another party. See *id.* at 183, 583 A.2d at 884 (plaintiff presented sufficient evidence to allow jury to conclude that defendant undertook to perform inspection for third party). Here, there is no evidence that defendant, by erecting a fence to enclose his horse pasture, undertook to render services to anyone other than himself.

The *Derosia* case on which plaintiffs rely is inapposite. There the plaintiff had been injured while operating a table saw that did not have a safety guard. The record showed that the defendant, a workers' compensation insurer, had conducted safety inspections for the plaintiff's employer. Thus, in *Derosia* there was evidence of an undertaking — the performance of the inspections for the employer. Plaintiffs can point to nothing comparable in the case at bar.

*Affirmed.*

**Dooley, J.,** dissenting. The majority, like the trial court, has struck too soon, faulting plaintiffs for failing to "come forward with . . . facts from which a jury could reasonably infer a breach of . . . duty" while affirming a dismissal that prevented any factual showing. Accordingly, I dissent from parts I and II of the majority opinion.

Plaintiffs' complaint charged that the horse and pen were an attractive nuisance to the small child and it was foreseeable that the child would enter the pen, which was possible because the fence was not electrified. It further charged that in the confined area of the pen, "the horse was spooked and trampled plaintiff Cory." Defendant

---

harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

immediately moved to dismiss, arguing that Cory Zukatis was a trespasser and defendant owed no duty to a trespasser. With no factual development, the court dismissed the attractive nuisance count with the following order:

> Count I of the Complaint asserts a claim entitled "attractive nuisance." The doctrine of attractive nuisance is not recognized in Vermont. *Trudo v. Lazarus*, 116 Vt. 221, 223 (1950).

It went on, over a year later, to dismiss the remaining counts on a motion for summary judgment. That order did not revisit the attractive nuisance ruling or cite any facts that would have been relevant to such a ruling. None of the facts, or absence of claims or facts, cited in the majority opinion appear anywhere in the trial court rulings.

In my opinion, our law on landowner liability is in serious need of reexamination. We have failed to do so because the parties have not briefed or argued alternative theories, either here or in the trial court. See *Buzzell v. Jones*, 151 Vt. 4, 7, 556 A.2d 106, 109 (1989). Here, the parties have focused on part of that reexamination, whether to allow liability for damages caused by artificial conditions highly dangerous to trespassing children, as endorsed by Restatement (Second) of Torts § 339 (1965). I am inclined to follow the Restatement rule, although I prefer that any attractive nuisance rule be placed in the broader context of reconsidered policies on landowner liability generally.

We have been consistent that a motion to dismiss for failure to state a claim may not be granted "unless it appears beyond doubt that there exist no circumstances or facts which the plaintiff could prove about the claim made in his complaint which would entitle him to relief." *Levinsky v. Diamond*, 140 Vt. 595, 600-01, 442 A.2d 1277, 1280-81 (1982). We have emphasized that "[a] court should be 'especially reluctant to dismiss' a cause of action on the basis of the pleadings when the theory of liability is novel." *In re A.G.*, 151 Vt. 167, 169, 559 A.2d 656, 657 (1989) (quoting *Association of Haystack Property Owners, Inc. v. Sprague*, 145 Vt. 443, 447, 494 A.2d 122, 125 (1985)).

I cannot find the proper standard for judging a Rule 12(b)(6) motion reflected anywhere in the majority opinion. Instead of considering what plaintiffs might be able to prove in support of their brief complaint, and showing reluctance to rule on a novel theory without factual development, the majority relies on facts not stated in the

complaint and faults plaintiffs for failing to make contrary and specific factual allegations. It concludes from this that the horse "was not aggressive," that "the fence was in good repair and effectively restrained the horse," that the "failure to activate the electric wires was [not] unreasonable," and that "the potential for young children to enter harm's way was [not] substantial enough to warrant 'child proofing' the pasture." If we look at the complaint in the way our decisions specify, we must conclude that it is entirely possible that plaintiffs could prove that the electric charge would have kept the child out of the horse pen without injuring him and that the horse pen was such a small, confined area that there was an unreasonable risk that a horse, spooked by an intruder and unable to avoid contact, would react by trampling the intruder. Plaintiffs are clearly entitled to make this kind of showing.

The majority holds that "summary judgment should have been granted on all three counts of plaintiffs' complaint." That statement might ultimately prove correct, but plaintiffs are entitled to have summary judgment granted on a motion for that relief and not a motion to dismiss. Meanwhile, this Court should face and decide the question of law presented by the trial court.

I dissent.