2004 VT 97

## Karen KEEGAN v. LEMIEUX SECURITY SERVICES, INC. and Barr & Barr, Inc.

[861 A.2d 1135]

No. 03-341

¶ 1. September 28, 2004. Middlebury College Security Officer Karen Keegan was injured after entering a Barr & Barr, Inc. (Barr) construction site "to ensure the safety of" a trespasser. In an attempt to grab the fleeing intruder, she slipped and fell, injuring her knee. Alleging the accident resulted from Barr and Lemieux Security Services, Inc.'s (Lemieux) negligent failure to guard and maintain the security fence around the construction site, Keegan sued. The Chittenden Superior Court granted summary judgment in favor of defendants, finding they owed no duty to Keegan. We affirm.*

¶ 2. In the fall of 2000, Middlebury College contracted with Barr to serve as a general contractor on a dormitory construction project in the middle of the campus. Barr, not the College's security personnel, was responsible for safety within the site. The College was concerned with keeping students away from construction site hazards and, as a result, Barr had a continuous six-foot chain-link fence installed to secure the majority of the project. An unrelated excavation and paving project made it impossible to erect the security fence around a portion of the site, so Barr employed free-standing chain-link panels, saw-horse barriers, and caution tape to prevent entry to that area. In spite of these barriers, unau-

_____

*Chief Justice Amestoy and Associate Justice Dooley were present for oral argument but did not participate in the decision.

thorized people on occasion used the construction site as a short cut across campus. In response, Barr hired Lemieux to patrol the site on weekend evenings in the hope of further discouraging trespassers.

¶ 3. On the night of November 19, 2000, Keegan was conducting a routine patrol of College buildings when she saw four men dismantling the construction site barriers. When she called out to them, they fled and eventually entered the construction site at a different point by going over the chain-link fence. Allegedly to secure the safety of the trespassers, she radioed her supervisor and followed the four intruders into the construction site. Keegan testified at her deposition that she knew the construction site was dangerous, slippery, and littered with construction debris.

¶ 4. Shortly after entering the site, Keegan saw another officer approaching her, chasing a young man later identified as Nicholas Atwood. Keegan reached out to grab Atwood, but she slipped on the "wet ground ... [and] construction material," injuring her knee, arm, and back. Atwood continued through the construction site and climbed over an intact portion of the six-foot chain-link fence. Keegan's colleagues followed Atwood over the fence, caught him, and tackled him onto the ground. The officers then took Atwood to the campus security office, identified him as a nonstudent, gave him a trespass notice, and advised him that he could not come back on campus. Keegan's injury required lateral release surgery, which left her with a permanent impairment to her knee.

¶ 5. Keegan collected workers' compensation for her injury and later filed suit against Barr and Lemieux. She claimed that, but for Barr's negligent failure to provide sufficient fencing around the site and Lemieux's negligent failure to adequately patrol the site, she would not have needed to enter the con-

struction site to secure the safety of the trespassers and would not have been injured. Defendants filed motions for summary judgment on three separate grounds. First, they argued that they owed no duty to maintain better fencing or greater security to protect Keegan from an injury she obtained while attempting to rescue trespassers on the site. Second, Barr and Lemieux insisted that Keegan's claim was barred by the firefighter's rule. Finally, they argued that Keegan could not show that their conduct was the proximate cause of her injury.

¶ 6. The superior court granted Barr and Lemieux's summary judgment motions, reasoning that when Keegan entered the construction site to rescue a trespasser, Barr and Lemieux's duty to Keegan was no greater than the duty owed to the trespasser. The court held that, since an owner or occupier of land must refrain only from subjecting a trespasser to willful and wanton misconduct, Keegan failed "as a matter of law to show ... breach of a duty owed her." Relying on *Bonney v. Canadian National Ry.*, 800 F.2d 274, 279 (1st Cir. 1986), the court rejected Keegan's argument that an owner or occupier of land owes a duty to a rescuer independent of its duty to the person being rescued. On appeal, Keegan argues that the trial court misconstrued the law when it held that Barr and Lemieux did not owe her a duty of care independent from that owed to the trespasser she was allegedly rescuing. As explained below, we agree with the trial court.

¶ 7. Taking Keegan's allegations as true, as we must, *Zukatis v. Perry*, 165 Vt. 298, 300, 682 A.2d 964, 965 (1996), it is evident that Barr and Lemieux are entitled to judgment as a matter of law. To prove a negligence claim, Keegan must show that defendants owed her a duty, that they breached the duty, that she suffered actual injury, and that defendants'

breach proximately caused her injury. *Id.* at 301, 682 A.2d at 966. Thus, the "governing issue" here is "whether the law imposed upon [defendants] a duty of care" — a determination the trial court must make as a matter of law. *Springfield Hydroelec. Co. v. Copp*, 172 Vt. 311, 317 n.2, 779 A.2d 67, 72 n.2 (2001).

¶ 8. State courts that have considered this issue have "rejected the concept of an independent duty to a rescuer without an underlying tortious act to the person actually placed in peril." *Bonney*, 800 F.2d at 279-80 (collecting cases). The duty owed to Keegan as a rescuer therefore derives from the underlying duty, if any, owed to the person she was allegedly rescuing when she was injured. In Vermont, a landowner or occupier generally owes no duty of care to a trespasser, except to avoid willful or wanton misconduct. *Baisley v. Missisquoi Cemetery Ass'n*, 167 Vt. 473, 477-78, 708 A.2d 924, 926 (1998). Therefore, if the rescuee is a trespasser, the landowner owes no duty to the rescuee or the rescuer, other than to avoid willful or wanton misconduct.

¶ 9. Although she does not clearly articulate the elements of her negligence claim, Keegan's argument rests on the notion that Barr and Lemieux owed her a duty to maintain a sufficient fence and to adequately patrol the site to prevent intentional trespassing. This novel theory of liability runs counter to the rule explained above that a landowner or occupier can be held liable for a rescuer's injury only to the extent it owed, and breached a duty to, the rescuee. *Bonney*, 800 F.2d at 279. Neither Barr nor Lemieux owed a duty to Atwood as a trespasser, beyond avoiding willful or wanton misconduct. Thus, defendants owed no greater duty to Keegan as a rescuer.

¶ 10. Keegan next relies on *Cameron v. Abatiell*, 127 Vt. 111, 241 A.2d 310 (1968), arguing that defendants owed her a direct duty as an invitee, not a vicarious

duty transmitted through the trespasser. She argues that this follows because she had to enter the site to pursue the trespassers as a result of defendants' negligence. In *Cameron*, we held a landowner liable to a police officer who fell when a step on the landowner's stairway broke. *Id.* at 117-18, 241 A.2d at 314-15. Because the landowner was aware that, as a routine part of his beat, the officer walked up the stairs to check the locks on the building, we held that the landowner had "a reasonable opportunity to make the premises safe or to warn plaintiff." *Id.* at 117, 241 A.2d at 314. In so holding, we observed that the officer did not use the stairs "in an emergency in the discharge of his police duties" or "to make an arrest or chase a thief or burglar." *Id.*

¶ 11. By contrast, Keegan does not seek to hold defendants liable by claiming she sustained an injury due to a defect on the property that defendants should have fixed or warned her about. Rather, she claims that defendants failed to prevent the intentional trespass that resulted in her presence at the construction site in the first place. Thus, our holding in *Cameron* does not support Keegan's claim. Therefore, because Keegan failed as a matter of law to show an essential element of her negligence claim — the breach of a duty owed to her — the trial court correctly rejected it.

¶ 12. Finally, because we find no basis on which Keegan can recover on her negligence claim, we see no reason to explore the firefighter's rule advanced by Barr and Lemieux.

*Affirmed.*